**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-314

DISH NETWORK L.L.C. and
ECHOSPHERE L.L.C.

      Plaintiffs,

v.

MATTHEW RAY, on behalf of himself and all similarly situated persons,

      Defendant.

---

**PETITION TO VACATE CLAUSE CONSTRUCTION ARBITRATION AWARD**

---

      DISH Network L.L.C. and Echosphere L.L.C. (jointly referred to herein as "DISH"), through their undersigned counsel, and pursuant to 9 U.S.C. §10, hereby petition this Court for an order vacating the Arbitrator's Clause Construction Award (which found both that the Arbiter rather than the courts had jurisdiction to decide the arbitrability of class and collective claims, and also that the arbitration agreement between DISH and Matthew Ray permits collective and class arbitration). <u>See</u> Award (Ex. 1). As grounds for this Petition, DISH states as follows:

<u>**THE PARTIES**</u>

      Matthew Ray ("Ray") is a former employee of DISH who resides in Colorado and is a citizen of the State of Colorado. Both DISH Network L.L.C. and Echosphere L.L.C. are incorporated under the laws of Colorado and headquartered in Colorado.

1

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this Petition pursuant to 28 U.S.C. § 1331 because the action is governed by the Federal Arbitration Act ("FAA"), a federal statute.  A court sitting in the district in which an arbitration award was rendered may vacate the award upon application by a party pursuant to the FAA, 9 U.S.C. § 10(a).  The arbitration is proceeding in Denver, Colorado and the Clause Construction hearing was held (telephonically) with the parties' counsel in Colorado.

Venue is proper in this judicial district under 28 U.S.C. § 1391 and 9 U.S.C. § 10.  A substantial number of events giving rise to the claim occurred here and Ray is a citizen and resident of the State of Colorado.

## PROCEDURAL BACKGROUND

Ray worked for DISH as an inside sales associate for two years.  His employment was terminated in 2015 after he abandoned his job (he failed to report to work for a number of days).

He then asserted claims against DISH under the Fair Labor Standards Act (FLSA), Colorado's Wage Claim Act, and the Colorado Minimum Wage Act, as well as a common law claim alleging breach of contract.  Ray originally filed his claims in the United States District Court for the District of Colorado.  Upon being served with the Complaint, however, DISH's counsel contacted Ray's counsel to notify him that Ray signed an Arbitration Agreement on May 30, 2013 (hereinafter "Agreement").  See Ex. 2.  And the Agreement sets forth that "[t]he Employee agrees that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*., and is fully enforceable," and the arbitration "shall be governed by and construed in

accordance with the substantive law of the State in which the Employee … last performed services for DISH" (which is Colorado and the Tenth Circuit).  See Id. at ¶1.

Ray voluntarily dismissed the USDC case without prejudice and filed his case with the American Arbitration Association ("AAA"), asserting the same four claims.  He attempted to pursue these claims, however, as a Fed. R. Civ. P. 23 class action and a 29 U.S.C. §216(b) collective action.  A copy of Ray's Amended Class and Collective Action Complaint is attached as Ex. 3.  Despite the Arbitration Agreement's silence concerning collective and/or class arbitration, Ray alleged collective and class action claims within his AAA complaint.  DISH immediately objected to the attempt to include collective and class action claims because the Agreement did not contemplate such claims and collective and/or class arbitration is not appropriate.  See Answer (Ex. 4).  Proceedings began at the AAA in July 2015.

Because collective and class claims were asserted (regardless of the merits or appropriateness for inclusion), the arbitration had been proceeding under the AAA's Supplementary Rules for Class Action, which proceed pursuant to several stages.  The first step is a determination of whether the applicable arbitration clause permits arbitration to proceed on behalf of or against a class, which is called the "Clause Construction Award."  In the case at bar, this step has just been completed.  On December 29, 2015, Arbitrator Thomas J. Brewer issued his Clause Construction Award ("Award" (Ex. 1)), concluding that the Arbitration Agreement permits collective and class arbitration.  Before the Arbitrator (and now this Court) were two actually two issues: (1) the threshold issue of whether the Arbitrator had jurisdiction to rule on whether the Agreement allowed for collective and class claims; and (2) whether collective and/or class claims were included in the Arbitration Agreement.

The Arbitrator concluded that he had jurisdiction (rather than it being for a court) because: (1) the issue as to whether the Agreement provided for collective/class arbitration did not fall into the "narrow exception" for courts to decide, but was what kind of arbitration proceeding the parties agreed to, which concerned contract interpretation and arbitration procedures and was appropriate for an arbitrator to determine; and (2) the parties expressed their intention that arbitrability be determined by the arbitrator in two ways: (a) by agreeing that the Agreement required arbitration of "any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination from employment" without including any exception for arbitrability for class or collective claims; and (b) the Agreement expressly provided that the arbitration must be conducted under the AAA's National Rules for the Resolution of Employment Disputes which sets forth that the arbitrator shall have the power to rule on his or her own jurisdiction.

In finding that the Agreement allowed collective and class arbitration, the Arbitrator concluded: (1) the Agreement's language (and specifically the use of "any claim, controversy and/or dispute between them") is broad enough to encompass both the FLSA and the other claims alleged in Ray's Complaint, and that the FLSA specifically includes collective actions; (2) the Agreement enumerates six exceptions to the broad language of "any claim, controversy and/or dispute," but does not include an exclusion for class or collective claims; (3) a reasonable interpretation of the Agreement does not indicate that the parties intended to agree to exclude class or collective claims because the Agreement only set forth a waiver of right to trial, trial by jury, and common law claims for punitive and/or exemplary damages and further states that it does not limit any statutory remedy (and the FLSA allows for collective claims); (4) there were ambiguities

in the language of the Agreement to be resolved against DISH as the drafter of the Agreement; (5) the Agreement was not silent as to class claims because of the broad and exception language used in the Agreement, and while the Agreement does not specifically authorize class or collective arbitration, it does not specifically forbid it; (6) the Agreement included bilateral language throughout, but because of other broad and lack of exception and waiver language, class or collective claims are contemplated in the Agreement as a whole; and (7) while a requirement of confidentiality was written into the Agreement, other tools are available to allow confidentiality so that such language in the Agreement does not militate against class or collective arbitration. Despite some of his conclusions weighing in favor of DISH's position, the Arbitrator inexplicably gave those conclusions less weight and ruled that both "opt-in" FLSA collective claims and "opt-out" class claims for the state wage and breach of contract claims were part of the parties' Agreement.

Pursuant to the AAA's Supplementary Rules for Class Action, Rule 3, the case has been stayed for thirty days (through January 28, 2016) for the parties to move a Court to confirm or vacate the Award.

## **<u>INTRODUCTION</u>**

The Arbitrator exceeded his power under both the FAA (9 U.S.C. § 10(a)(4)) and federal common law by inappropriately conferring jurisdiction upon himself.

He further exceeded his power because of his manifest disregard of the law in completely ignoring that the Agreement is ***<u>silent</u>*** as to collective and class arbitration.  Rather than applying this silence properly to find a lack of agreement to collective and class arbitrations, the Arbitrator improperly found that class and collective claims ***<u>were</u>*** part of the Agreement, thereby disregarding

the Supreme Court precedent of <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 559 U.S. 662 (2010) and <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333 (2011).

The Arbitrator also manifestly disregarded the law when he failed to apply the intent of the parties based on what was actually set forth in the Agreement, contrary to Colorado law.

Finally, the Award violates the express and unambiguous terms of the parties' contract (Arbitration Agreement).  Ignoring the express terms of the Agreement, the Arbitrator improperly gave weight to certain parts of the contract and disregarded others.  Had the Arbitrator actually applied the express and unambiguous terms of the Agreement (as required under the law), he should have come to an opposite conclusion and his Award would have properly found that neither collective or class claims were part of the Agreement.

Accordingly, DISH requests that this Court (1) vacate the Clause Construction Award; (2) rule that the Arbitration Agreement does not include collective and class claims; and (3) order that the arbitration may only proceed on Ray's individual claims.

## **STANDARD OF REVIEW**

While generally, judicial review of an arbitration award is limited, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, lists four circumstances in which a court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

6

9 U.S.C. § 10.

There are a few additional circumstances in which a court may vacate an arbitration award, including: (1) when the arbitrator demonstrates a manifest disregard for the law; (2) when the award violates public policy; and (3) when the award violates the express and unambiguous terms of the parties' contract. See Williams v. Nat'l Football League, 2012 WL 2366636, at *4 (D. Colo. June 21, 2012) aff'd, 495 F. App'x 894 (10th Cir. 2012); Sheldon v. Vermonty, 269 F.3d 1202, 1206 (10th Cir. 2001). DISH seeks to vacate the Award under both the manifest disregard of the law standard and the violation of the express and unambiguous terms of the parties' contract standard.

The manifest disregard standard applies to an arbitrator's conclusions of law. Hosier v. Citigroup Glob. Markets, Inc., 835 F. Supp. 2d 1098, 1102 (D. Colo. 2011) amended, 858 F. Supp. 2d 1206 (D. Colo. 2012). Manifest disregard of the law means "willful inattentiveness to the governing law" and in such circumstances, "the record will show the arbitrators knew the law and explicitly disregarded it." See Bowen v. Amoco Pipeline Co., 254 F.3d 925, 932 (10th Cir. 2001).

When an arbitrator's award is contrary to the express language of the contract or "so unfounded in reason and fact, so unconnected with the wording and purpose of the * * * agreement as to 'manifest an infidelity to the obligation of the arbitrator.' ", it cannot stand. Mistletoe Exp. Serv. v. Motor Expressmen's Union, 566 F.2d 692, 694 (10th Cir. 1977) (finding that the arbitrator substituted his views o for the provisions of the contract and therefore violated the essence of the contract). Further, "[t]he award does not draw its essence from the agreement if 'viewed in the light of its language, its context, and any other indicia of the parties' intention,' it is without rational support." Id.

<u>**GROUNDS SUPPORTING VACATUR OF AWARD**</u>

**I.     The Arbitrator's Award Regarding His Jurisdiction to Award Collective and Class Arbitration Should be Vacated.**

The specific issue before the Arbitrator concerning his jurisdiction was whether or not he had jurisdiction to determine the arbitrability of class or collective arbitration.  By bestowing this jurisdiction upon himself, the Arbitrator not only exceeded his power under 9 U.S.C. § 10(4), but he also manifestly disregarded the law and violated the express and unambiguous terms of the Arbitration Agreement.

**A.     The Arbitrator Exceeded His Power in Deciding the Jurisdictional Question of Arbitrability for Class and Collective Arbitration.**

In concluding that he had the authority to decide the arbitrability of the class and collective claims, the Arbitrator erroneously applied <u>AT&T Technologies, Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 649 (1986) and <u>First Options of Chicago v. Kaplan</u>, 514 U.S. 938, 943 (1995), thereby ignoring governing law.

<u>AT & T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 649 (1986), does not create a "narrow" exception for when a court may determine an issue of arbitrability.  Rather, <u>AT&T</u> places such determination normally within the province of the court, stating that "the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." <u>Id.</u>  Indeed, the only "narrow" exception evident in <u>AT&T</u> is one where the court ***may*** ***<u>not</u>*** determine an issue of arbitrability; "[u]nless the parties clearly and unmistakably provide otherwise."  <u>Id.</u>  Moreover, the Supreme Court of the United States observed that an arbitrator having the power to determine his own jurisdiction would impose obligations outside the contract, which undercuts the function of agreements to arbitrate.  <u>Id.</u>  The Court concluded that placing the

8

arbitrability question before the arbitrator was error and that "[i]t was for the court, not the arbitrator, to decide … whether the dispute was to be resolved through arbitration." Id. at 651.

The Arbitrator's rulings here deliberately ignore all of the foregoing law.  He erroneously concluded an arbitrator nominally has jurisdiction to decide arbitrability unless a "narrow" exception exists for the court, which is exactly the opposite of the court's ruling in AT&T.  The law is that a ***court*** nominally has jurisdiction to decide arbitrability and a "narrow" exception exists for the arbitrator, which conclusion the arbitrator completely ignored.  The Arbitrator also relied upon First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995) in his erroneous conclusion that there is a "narrow exception" to an arbitrator deciding arbitrability issues.  That is not what the First Options case holds.  Instead, the Supreme Court stated that "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so" and "the law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement'." Id. at 944-45.  The question before the Arbitrator was the first one – who (a court or him) should decide the arbitrability of a class or collective arbitration.  He misapplied the governing law in using the "narrow exception" analysis, and in doing so, exceeded his power (wrongly conferring jurisdiction upon himself where the law mandates otherwise).

**B.      The Arbitrator Also Manifestly Disregarded the Law in Coming to the Conclusion that He Had Jurisdiction to Determine Collective and Class Arbitrability.**

The Supreme Court has "not yet decided whether the availability of class arbitration" is for a judge or for an arbitrator to resolve.  Oxford Health Plans LLC v. Sutter, 133 S.Ct. 2064, 2068

n.2 (2013); see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 680 (2010) (discussing that the Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003) decision was only a plurality opinion and does not necessarily mean that an arbitrator, not a court, is to decide whether a contract permits class arbitration).   But two Circuit courts have found that the "question of arbitrability be decided by the Court unless the parties clearly and unmistakably provide otherwise."   See Opalinksi v. Robert Half Int'l Inc., 761 F.3d 326, 332–35 (3d Cir. 2014) ("The Supreme Court has long recognized that a district court must determine whose claims an arbitrator is authorized to decide"); Reed Elsevier, Inc. v. Crockett, 734 F.3d 594, 597–99 (6th Cir. 2013) ("the question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved for 'judicial determination'")).

Thus, the Arbitrator's conclusion that the availability of class arbitration was for him to decide is not supported by law.   Importantly, the Arbitrator claimed that his conclusions are consistent with the analysis adopted by the "Tenth Circuit" in Quillon v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221, 227 (3d Cir. 2012) (which the Arbitrator improperly cites as Quillon v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 232 (10th Cir. 2012)).   That case, however, is a Third Circuit case and therefore not controlling here.   For the Arbitrator to base his conclusion that he had jurisdiction over the arbitrability issue here, as he did, evidences that he had a manifest disregard of the law as he did not even review the case to determine that it was not within the Tenth Circuit.   He should have looked to and applied Colorado law, which is clear that issues of arbitrability are presumptively submitted to the courts (which he did not do).   See Galbraith v. Clark, 122 P.3d 1061, 1063-64 (Colo. App. 2005).

If an arbitration agreement does not specify who (a court or an arbitrator) is to decide the question of arbitration, as is the case here, an arbitration question is clearly for a court to decide under Colorado law.  When the parties specifically agree that an arbitrator would decide "[a]ny dispute concerning this [a]greement—the way it was formed, its applicability, meaning, enforceability, or any claim that all or part of this [a]greement is void or voidable," then it is appropriate for the arbitrator to determine an issue of arbitrability.  Galbraith, 122 P.3d at 1064. But when "the agreement is silent or ambiguous on [the question of who is to decide whether a dispute falls within the scope of the arbitration clause], then the determination should be made by the court, not the [arbitrator] ...."  City & Cnty. of Denver, City & Cty. of Denver v. Dist. Court In & For City & Cty. of Denver, 939 P.2d 1353, 1363 (Colo. 1997) (finding that when the contract was silent on the question of whether the district court or ADR decision-maker should have decided whether the claims fell within the reach of the ADR clause, the district court should have made the determination).  An arbitrator lacks jurisdiction to address an issue ***outside the scope*** of the arbitration agreement.  Id. at 1363–64.  Thus, absent clear intent expressed in the arbitration agreement, trial courts, not arbitrators, are presumed to determine issues of scope; "otherwise, unwilling parties might be forced to arbitrate a matter they reasonably thought a judge, not an arbitrator, would decide."  Radil v. Nat'l Union Fire Ins. Co. of Pittsburg, PA, 233 P.3d 688, 693-94 (Colo. 2010).

Similar to the facts in the City and Cnty. of Denver case, supra, here the Agreement is completely silent as to whether a court or the arbitrator should decide a question of collective and/or class arbitration.  City & Cnty. of Denver, 939 P.2d at 1365.  Thus, as within that case, it is

the Court that has jurisdiction on this issue, not the Arbitrator (as he wrongly concluded in direct conflict with Colorado law).

Because of his failure to apply the law correctly in order to confer jurisdiction upon himself, the Arbitrator not only exceeded his power, but also ignored and disregarded the applicable and binding law. His Award should therefore be vacated and such determination concerning arbitrability should be made by this Court.

### C. In Bestowing Jurisdiction Upon Himself, The Arbitrator Violated the Express and Unambiguous Terms of the Agreement.

The Agreement expressly states that "the Employee and DISH agree that any claim, controversy and/or dispute between them, arising out of an/or in any way related to Employee's application for employment, employment and/or termination of employment, whenever and wherever brought, shall be resolved by arbitration." Agreement (Ex. 2), at ¶ 1. This language says nothing whatsoever about decisions of arbitrability. In fact, the entire Agreement is completely devoid of providing an arbitrator any power concerning determination of questions of arbitrability. For the Arbitrator to have found that he, and not a Court, was the proper entity for determining the arbitrability of collective and class claims is directly in conflict with the express and unambiguous terms of the contract (of which no such terms exist or even are implied throughout). This is yet another basis for the Court to vacate the Arbitrator's over-reaching conclusion conferring jurisdiction on himself.

### D. The Arbitrator's Additional Attempt to Support His Jurisdiction Finding Also Fails; His Decision Exceeded His Power, Manifestly Disregarded Governing Law, and Violated the Unambiguous Terms of the Agreement.

The Arbitrator premised his decision granting himself jurisdiction to determine arbitrability on two dubious conclusions. First, he concluded that the parties "clearly and unmistakably"

expressed their intention for matters of arbitrability of the class and collective claims to be by an arbitrator rather than the courts because of agreement language requiring arbitration of "any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment."  Second, he found jurisdiction because the Arbitration Agreement was to be conducted under the AAA's National Rules for the Resolution of Employment Disputes, which state "The arbitrator may have the power to rule on his or her own jurisdiction."  Nevertheless, he still exceeded his power, manifestly disregarded the law, and ignored the express terms of the Agreement because both conclusions fail in the face of the governing law.

First, the Arbitrator ignored that there was no grant of jurisdiction for an arbitrator to decide arbitrability issues anywhere in the Agreement.  Rather, he ***infers*** it into the Agreement.  The language of the Agreement simply does not state any intention for the parties to allow the arbitrator to decide threshold issues of arbitrability.  Moreover, the incorporation of the AAA National Rules for the Resolution of Employment Disputes ("AAA Employment Rules") does not invoke let alone allow for class or collective arbitration.  For the Arbitrator to try to connect the two in order to confer jurisdiction upon himself is as unwarranted as it is legally impermissible.

Further compounding his error, he ignores Tenth Circuit precedent in determining that incorporation of the AAA Employment Rules somehow empowered him to decide arbitrability issues.  Specifically, the Arbitrator ignored the case of Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775 (10th Cir. 1998) on the basis that it interpreted Florida and Kansas law.  See Award, Ex. 1, at p. 7 n. 4.  His basis for ignoring Riley was completely misguided and does not properly follow the case's precedent.  There, the Tenth Circuit examined the federal common law

13

of arbitrability (not Florida and Kansas law, as the Arbitrator incorrectly stated), which is applicable here because the Agreement is expressly governed by the FAA. See Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 776 (10th Cir. 1998). Moreover, like Florida and Kansas law, under Colorado law, the issue of arbitrability is a question for the courts and not an arbitrator. See Galbraith v. Clark, 122 P.3d 1061, 1063-64 (Colo. App. 2005) ("Issues of arbitrability—whether a particular dispute should be arbitrated—are presumptively submitted to the courts."); Parker v. Ctr. for Creative Leadership, 15 P.3d 297, 298 (Colo. App. 2000) ("the question of arbitrability is one for the court to decide.").

The Arbitrator also ignored this Court's ruling in St. Charles v. Sherman & Howard L.L.C., 2015 WL 1887758 (D. Colo. Apr. 24, 2015) on the incorrect basis that it "relied on Riley with no analysis." This Court, however, _**did**_ analyze Riley's holding and in doing so, opined:

> The Tenth Circuit Court of Appeals, unlike other Circuit Courts of Appeals, has held that a parties' arbitration clause which stated that it will be conducted "in accordance with the Commercial Arbitration Rules of the American Arbitration Association" Riley Mfg., 157 F.3d at 777 n.1, is not "clear and unmistakable" evidence that the parties agreed to have the question of arbitrability determined by the arbitrator, Id. at 780. See Oracle Am., Inc. v. Myriad Group A.G., 724 F.3d 1069, 1074 (9th Cir. 2013).

St. Charles v. Sherman & Howard L.L.C., No. 14-CV-03416-RM-CBS, 2015 WL 1887758, at *3 (D. Colo. Apr. 24, 2015).

To ignore the St. Charles case because it "relied on Riley with no analysis" further indicates the Arbitrator's desire to come to the conclusion he believed should occur (and is evidence of him making public policy) rather than applying the law as it stands in the Tenth Circuit.

The Arbitrator ignored other persuasive case law that analyzes the exact same situation of that here (where AAA rules are referenced within an arbitration agreement and the issue is whether

an arbitrator has jurisdiction to decide arbitrability of classwide arbitration).  Specifically, he

ignored the cases of <u>Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett</u>, 734 F.3d 594, 599

(6th Cir. 2013) <u>cert. denied sub nom. Crockett v. Reed Elsevier, Inc.</u>, 134 S. Ct. 2291, 189 L. Ed.

2d 173 (2014) (holding that whether the parties agreed to arbitrate class-wide claims is a question

for the court because although there was a mention that the arbitration would proceed under the

Commercial Rules of the AAA, there was no mention of class-wide arbitration at all and "at best,

the agreement is silent or ambiguous as to whether an arbitrator should determine the question of

class-wide arbitrability; and that is not enough to wrest that decision from the courts.");

<u>Chesapeake Appalachia, L.L.C. v. Scout Petroleum, LLC</u>, 73 F. Supp. 3d 488, 500-01 (M.D. Pa.

2014) (holding that reference to and incorporation of the AAA rules was because the contract

provides for bilateral arbitration and "[t]he contract here is silent or ambiguous as to class

arbitration, far from the 'clear and unmistakable' allowance needed for an arbitrator, and not a

court, to turn to the clause construction question"); and <u>Opalinski v. Robert Half Int'l Inc.</u>, 761

F.3d 326, 332 (3d Cir. 2014) cert. denied, 135 S. Ct. 1530, 191 L. Ed. 2d 558 (2015) (holding that

whether an agreement provided for classwide arbitration is a question of arbitrability for the court).

In the cases he chose to follow, none contained an analysis of the specific issue here - the

question of arbitrability of a class or collective claim.  <u>See, e.g.</u>, <u>Ahluwalia v. QFA Royalties, LLC</u>,

226 P.3d 1093, 1099 (Colo. App. 2009) (applying the AAA Commercial Arbitration Rules to

disputes over franchise agreements); <u>Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.</u>,

687 F.3d 671, 675 (5th Cir. 2012) (applying the AAA Rules in a question of damages regarding

subcontract); <u>Fallo v. High-Tech Inst.</u>, 559 F.3d 874, 878 (8th Cir. 2009)(applying the AAA Rules

to tort claims); <u>Qualcomm Inc. v. Nokia Corp.</u>, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (applying AAA rules to patent infringement claims).

And in the only other case upon which the Arbitrator relied, <u>Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., Inc.</u>, 251 P.3d 1091, 1094 (Colo. App. 2010), the Colorado Court of Appeals did not opine that incorporation of the AAA rules within an Agreement meant clear and unmistakable evidence of the parties' intent to delegate arbitrability to the arbiter. Rather, the <u>Taubman</u> court only observed that some other courts agreed with such a contention. <u>Id.</u> ("If parties to an arbitration agreement have explicitly incorporated a rule that empowers the arbiter to determine arbitrability, numerous courts agree with Neiman's contention that such incorporation constitutes clear and unmistakable evidence of the parties' intent to delegate that issue to the arbiter.").  Further, despite this observation, the Colorado Court of Appeals concluded that the "parties did not abrogate the general rule that courts make such determinations" regarding arbitrability.  <u>Id.</u> at 1095.  The Arbitrator therefore completely misapplied the <u>Taubman</u> case, choosing to focus on dicta that was not applicable here rather than the court's holding in order to bolster his decision, which plainly exceeded his authority.

Additionally, the Arbitrator ignored that the only AAA Rules that were incorporated in the Agreement are specific to "disputes arising out of employer plans" and "disputes arising out of individually-negotiated employment agreements and contracts."  <u>See</u> p. 10 of the current AAA Employment Arbitration Rules & Mediation Procedures, Ex. 5.  Thus, Rule 6(a) concerning jurisdiction would ***at most*** apply to one of these two bilateral arbitration areas, but not class or collective action claims (the pertinent jurisdictional areas in this case).

Moreover, the United States District Court for the Southern District of California recently decided the same issue as here (whether it was the court or an arbitrator that may decide if class arbitration is available under the agreement) in favor of DISH.  First, it reviewed the following language:

> This mandatory arbitration of Disputes – Waiver of Rights Agreement ("Agreement") made this 17[th] day of Oct[ober], 2011, is between DISH Network L.L.C. and all of its affiliates … and Jose Tanojar ("Employee") … the Employee and DISH Network agree that any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment … and/or termination of employment, whenever and wherever brought, shall be resolved by arbitration.

 Tajonar v. Echosphere, L.L.C., Case No. 14cv2732-LAB (RBB), Order Compelling Arbitration and Dismissing Case Without Prejudice (Aug. 10, 2015), attached hereto as Ex. 6, at p. 3.  This language is almost exactly the same as that of the Agreement here, except for an immaterial difference in that the language used in Tajonar is that the agreement was "made this 17[th] day of Oct[ober], 2011" while in the Ray Agreement it was "acknowledged today."  Compare Tajonar, at p. 3 to Agreement, Ex. 2 at ¶1.   Then, the Court applied the Opalinki and Reed Elsevier cases, supra.  And in applying those cases, the Court found that it was the proper entity to decide the issue of class arbitration. Tajonar, Case No. 14cv2732-LAB (RBB), Order Compelling Arbitration and Dismissing Case Without Prejudice (Aug. 10, 2015), Ex. 6, at p. 3.  Specifically, the Court stated "[b]ecause the Agreement doesn't 'clearly and unmistakably provide' that an arbitrator must decide whether to permit class arbitration, the Court decides the issue.  Id.

## II.    The Arbitrator's Determination that the Parties Agreed to Arbitrate Collective and Class Claims Should Also Be Vacated.

Although the Arbitrator did not have jurisdiction to determine arbitrability, he also manifestly disregarded the law and exceeded his power under the FAA in concluding that the

Parties manifested a clear intent in the Agreement to arbitrate collective and class claims when there was nothing at all in the Agreement that expressly included or even discussed collective and class claims. Specifically, the Arbitrator's conclusions that the Agreement allowed arbitration of collective and class claims disregarded and misapplied Supreme Court precedent and Colorado law. His conclusions demonstrate a willful inattentiveness to the governing law, and the Award should be vacated on these grounds as well.

> **A.     The Arbitrator's Clause Construction Award Disregarded Supreme Court Precedent and Should Therefore Be Vacated.**

In concluding that the Agreement allows for class and collective arbitration, the Arbitrator disregarded the Supreme Court precedent of Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662 (2010) and AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011). While the Arbitrator properly noted that Stolt-Nielsen held that an implicit agreement to authorize class-arbitration was not a term that an arbitrator could infer solely from the fact that the parties entered into an agreement to arbitrate, he then inexplicably inferred class arbitration from the parties entering into an agreement to arbitrate, completely ignoring the clear and binding Supreme Court precedent in Stolt-Nielsen and, apparently, his own finding. See Award, Ex. 1, at p. 8.

Stolt-Nielsen holds that when there is silence in an arbitration agreement concerning class arbitration, there is ***not*** consent to resolve disputes in class arbitration. See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 687 (2010). The "silence" discussed in Stolt-Nielsen meant there had been ***no*** agreement reached on the issue of class arbitration, which is exactly the case here. Id. at 668-69. In relying upon the fact that the parties in Stolt-Nielsen stipulated that their arbitration agreement was silent, the Arbitrator unsuccessfully tried to distinguish the Agreement here from application of the silence in Stolt-Nielsen. Such application, however, ignores the very

core principle of <u>Stolt-Nielsen</u>: when there is no specific agreement between the parties to arbitrate

class claims, no such agreement can be inferred.  <u>Stolt-Nielsen</u>, 559 U.S. at 685.  The Agreement

at issue here was silent (as defined in <u>Stolt-Nielsen</u>) because there was no text in the Agreement

evidencing a specific intent of the Parties to arbitrate class or collective claims.  <u>See</u> Agreement,

Ex. 2.

In the case of <u>AT&T Mobility LLC v. Concepcion</u>, 131 S. Ct. 1740, 1750-51 (2011), the

Supreme Court stated, "[a]lthough we have had little occasion to examine class-wide arbitration,

our decision in *Stolt–Nielsen* is instructive" and set forth that "that the agreement at issue, which

was silent on the question of class procedures, could not be interpreted to allow them because the

'changes brought about by the shift from bilateral arbitration to class-action arbitration' are

'fundamental.'"  <u>Concepcion</u>, 131 S. Ct. at 1750-51.  The <u>Concepcion</u> case did not, as the

Arbitrator did, try to carve out the application of <u>Stolt-Nielsen</u> because the parties stipulated that

the agreement was indeed silent (which according to <u>Stolt-Nielsen</u> means that they agreed that

there had been no agreement as to the class arbitration).  Thus, the Arbitrator disregarded this

additional Supreme Court precedent when he improperly inferred that the parties agreed to

arbitrate class and collective claims (despite silence within the Agreement).

**B.      The Arbitrator Also Manifestly Disregarded Colorado Law.**

Not only did the Arbitrator ignore Supreme Court precedent in concluding that the

Agreement permits arbitration of class and collective claims, he also ignored binding Colorado

law that is directly on point.  This Court previously has analyzed the class action aspect of the

<u>Stolt-Nielsen</u> case in <u>Hickey v. Brinker Int'l Payroll Co., L.P.</u>, 2014 WL 622883, at *4 (D. Colo.

Feb. 18, 2014).  The Court held that, based on <u>Stolt-Nielsen</u>, "[t]he mere silence [of certain prior

arbitration agreements on the issue of class or collective claims] ***cannot be read*** to require defendant to submit to arbitration of class or collective action claims." Id. (Emphasis added.)

And the Colorado Court of Appeals, in analyzing and interpreting Stolt-Nielsen, found that even when a waiver of class arbitration claims is found to be unconscionable, and an agreement is otherwise silent as to the permissibility of class arbitration, the court still had no authority to order class arbitration. See Medina v. Sonic-Denver T, Inc., 252 P.3d 1216, 1219-1220 (Colo. App. 2011) (citing Fensterstock v. Education Fin. Partners, 611 F.3d 124, 141 (2d Cir. 2010)). Specifically, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." Id. These cases establish that under Colorado law (when applying Stolt-Nielsen), if an agreement is silent as to the permissibility of class arbitration (meaning there is no specific agreement to arbitrate such claims), there is no authority for, let alone requirement that, class claims to be submitted to arbitration. This case law is directly on point. And the Agreement expressly incorporates Colorado law. See Agreement, Ex. 2, at ¶ 2 ("The arbitration shall be governed by and construed in accordance with the substantive law of the State in which the Employee … last performed services for DISH," which was in the state of Colorado.) The Arbitrator's failure to adhere to these cases meets the standard of manifest disregard of law and the Award must be vacated.

### C. The Arbitrator Manifestly Disregarded Colorado Law in Applying the Contra Proferentem Rule of Construction to Find Ray's State Claims Requiring An "Opt-Out" Class Would Allow for Class Arbitration.

In concluding that the Agreement allowed "opt-out" arbitration for Ray's state law wage claims and breach of contract claim, the Arbitrator disregarded Colorado law. Specifically, he improperly applied the rule of construction that a contract is to be construed against the drafter.

"[T]he rule that words of a contract are to be taken most strongly against the party using them is the last rule to be resorted to, and never to be applied except when other rules of interpretation fail." Moland v. Indus. Claim Appeals Office of State, 111 P.3d 507, 510-11 (Colo. App. 2004), quoting Quad Constr., Inc. v. Wm. A. Smith Contracting Co., 534 F.2d 1391, 1394 (10th Cir.1976) (internal quotations omitted) and citing Williston, *A Treatise on the Law of Contracts* § 32:12, at 480 (4th ed. 1999) ("The rule of *contra proferentem* is generally said to be a rule of last resort and is applied only where secondary rules of interpretation have failed to elucidate the contract's meaning."). Colorado courts consistently look to the intent of the parties as the primary means of resolving ambiguity because the primary goal of contract interpretation under Colorado law is to determine and give effect to the intent of the parties. Moland, 11 P.3d at 511.

But rather than interpreting the Agreement as a whole and interpreting it to harmonize and to give effect to all of its provisions, as required under Colorado law (see Mid Century Ins. Co. v. Gates Rubber Co., 43 P.3d 737, 739 (Colo. App. 2002)), the Arbitrator applied a rule of law that should not have been used in what can only be an attempt to justify a certain public policy he wanted. In doing so, the Arbitrator knowingly and willfully disregarded and ignored Colorado law, and the Award should be vacated pursuant to 9 U.S.C. § 10.

## III. The Arbitrator Inappropriately Gave Weight to Certain Parts of the Agreement Over Others, Thereby Violating the Express and Unambiguous Terms of the Agreement.

In the Award, the Arbitrator states six different conclusions concerning the language of the Agreement -- three of which he concluded supported Ray's position and three of which supported DISH's position. The three cited in support of Ray's position were: (1) the language used in the agreement to define the scope of arbitrable controversies was broad enough to encompass the FLSA and therefore included collective claims as well; (2) because the Agreement had specifically

enumerated exceptions and did not include collective or class arbitration, the Agreement included collective and class claims; and (3) because the right to trial, right to a trial by jury, and common law claims for punitive and/or exemplary damages were waived and the Agreement further specified that nothing else in the Agreement "limits any statutory remedy to which the Employee may be entitled under law," collective and class claims were not waived and were part of the statutory remedies not limited by the Agreement.  Factors that supported DISH's position were: (1) that the Agreement did not expressly or specifically authorize class or collective arbitration; (2) numerous clauses referenced to bilateral rather than class proceedings; and (3) the Agreement requires that the arbitration proceedings be confidential (which is inapposite to class arbitrations and the corresponding rules).

"[T]he FAA imposes certain fundamental rules on arbitration agreements, including 'the basic precept that arbitration 'is a matter of consent, not coercion.'" Medina, 252 P.3d at 1219. The primary goal of interpretation of a contract is to give effect to the expressed intention of the parties.  See Austin v. US W., Inc., 926 P.2d 181, 183 (Colo. App. 1996).  In determining the parties' intent as to the scope of an arbitration agreement, the court must examine the wording of the arbitration clause and accord the terms of the clause their plain and ordinary meanings.  See Cache National Bank v. Lusher, 882 P.2d 952 (Colo. 1994); see also BFN-Greeley, LLC v. Adair Grp., Inc., 141 P.3d 937, 940 (Colo. App. 2006) ("Looking to the plain language of the agreement, we interpret it in a manner that best effectuates the intent of the parties.").

Here, the Arbitrator failed to do this key function.  Instead, he inappropriately weighted the three factors in favor of Ray's position as more significant than the other three factors.  In doing so, he ignored the express and unambiguous language of the Agreement.  Specifically, the

Arbitrator ignored **_all_** of the language throughout the entire Agreement that was bilateral.  He focused on the "any claim, controversy and/or dispute" language in concluding that the language was broad but ignored that the language continued stating "between them" and the other surrounding language that set forth the agreement was between DISH and "me ("Employee")". Agreement, Ex. 2 at ¶ 1.  Further, the language throughout the Agreement clearly expresses that it was only between DISH and the individual employee; there are no references to Ray being able to bring claims or bringing claims on behalf of anyone else other than himself.  See, e.g., Tajonar v. Echosphere, L.L.C., Case No. 14cv2732-LAB (RBB), Order Compelling Arbitration and Dismissing Case Without Prejudice (Aug. 10, 2015) at p. 3, Ex. 6 (finding that because the agreement made "no reference to employee groups, putative class members, other employees, or other employees' claims or disputes," it did not authorize class arbitration and the plaintiff must arbitrate individually).  The lack of contemplation, let alone authorization, of class or collective claims is also significant and part of the express agreement.  So is the fact that any arbitration under the Agreement is to be confidential.  All of these factors apply the actual language of the Agreement.

The three factors which the Arbitrator weighted more heavily are not express, but are areas in which **_he read_** such language into the Agreement.  As such, he ignored what was actually expressed – and agreed to – by the parties in the Agreement and imposed what he inferred instead. His Award therefore violated the express and unambiguous terms and language of the Agreement and should be vacated.

## CONCLUSION

Ignoring Colorado law, which mandates that a court is the proper entity to determine matters of arbitrability, the Arbitrator conferred jurisdiction upon himself so that he could rule on class and collective claims.  Such blatant disregard for controlling law is ample support to find that the Arbitrator exceeded his power under 9 U.S.C. § 10(a)(4), manifestly disregarded the law, and violated the express and unambiguous terms of the Arbitration Agreement.  Vacating his Award on this basis alone is therefore appropriate.

The Arbitrator also disregarded Supreme Court precedent and Colorado law in concluding that the Agreement was not silent, and permitting arbitration of class and collective claims despite the lack of any evidence that the parties intended to have such claims arbitrated.  The Arbitrator also knowingly disregarded law on contract construction, applying a standard that should not have been applied to this Agreement.  And, he ignored the language of the contract as a whole so that his interpretation of allowing collective and class claims contradicts the express language in the contract.  Because the Arbitrator disregarded controlling law and instead put forth his own view of policy regarding class arbitration, the Clause Construction Award fails at least three grounds under the FAA, federal law, and Colorado law where an award must be vacated (exceeding powers, manifest disregard, and violation of the contract terms).  Accordingly, as a matter of law, the Award must be vacated.

## PRAYER FOR RELIEF

DISH respectfully requests that the Court enter an order:

a.  Staying the enforcement of the Clause Construction Award until the resolution of this Petition;

    b.   Vacating the Award;

    c.   Allowing Ray to proceed at the AAA on only his individual claims; and

    d.   Granting such other relief as the Court deems proper.

       Respectfully submitted this 9th day of February, 2016.

By: _/s/ Meghan W. Martinez_
Meghan W. Martinez
Dayna L. Dowdy
MARTINEZ LAW GROUP, P.C.
720 South Colorado Boulevard
South Tower, Suite 1020
Denver, Colorado 80246
Telephone: (303) 597-4000
Fax: (303) 597-4001
martinez@mlgrouppc.com
dowdy@mlgrouppc.com

ATTORNEYS FOR RESPONDENTS

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on the 9th day of February, 2016, I electronically served the foregoing document on the following:

Brian Gonzales, Esq.
The Law Offices of Brian D.
Gonzales, PLLC 123 North
College Avenue, Suite 200
Fort Collins, CO 80524
<u>BGonzales@ColoradoWageLaw.com</u>

*Attorney for Defendant*

Jonathan J. Weed
Manager of ADR Services
American Arbitration Association
950 Warren Avenue
East Providence, RI 0291
<u>jonathanweed@adr.org</u>

*AAA Case Administrator*

*/s/ Beth Reinhardt*
Beth Reinhardt