**AMERICAN ARBITRATION ASSOCIATION**
**Employment and Class Arbitration Tribunal**

_____

In the Matter of the Arbitration Between:

**MATTHEW RAY,**

    **On behalf of himself and all similarly situated persons,**

    **Claimant,**

        **vs.**

    **DISH NETWORK, LLC and ECHOSPHERE, LLC,**

    **Respondents.**

Case Number:   01-15-0003-4651

_____

### CLAUSE CONSTRUCTION AWARD

I, Thomas J. Brewer, the undersigned arbitrator, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated May 30, 2013, and having considered the parties' submissions on clause construction, do hereby issue this partial final **Clause Construction Award** pursuant to Rule 3 of the Supplementary Rules for Class Arbitrations ("Class Arbitration Rules") of the American Arbitration Association ("AAA").

### I.      PROCEDURAL SUMMARY.

**Parties and Claims.**   Claimant Matthew Ray is an individual and resident of the State of Colorado.  Respondents DISH Network, LLC and Echosphere, LLC (collectively, "DISH") are both limited liability companies organized under Colorado law.  Claimant is a former employee of DISH.

Claimant Matthew Ray, Respondent DISH Network, LLC, "and all of its affiliates" entered into an Arbitration Agreement ("Arbitration Agreement") executed May 30, 2013, providing, in relevant part, as follows:

> In consideration of the Employee's employment
> by DISH (and/or any of its affiliates) as good and valuable

CLAUSE CONSTRUCTION AWARD - 1

EXHIBIT 1

consideration, the receipt and sufficiency of which are hereby acknowledged, the Employee and DISH agree that any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment, whenever and wherever brought, shall be resolved by arbitration.  The Employee agrees that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., and is fully enforceable.

. . . A single arbitrator engaged in the practice of law from the American Arbitration Association ("AAA") shall conduct the arbitration under the then current procedures of the AAA's National Rules for the Resolution of Employment Disputes ("Rules").  Regardless of what the above-mentioned Rules state, all arbitration proceedings, including but not limited to hearings, discovery, settlements, and awards shall be confidential . . .

Notwithstanding the foregoing, this agreement to arbitrate all claims shall not apply to Employee claims for statutory unemployment compensation benefits, statutory worker's compensation benefits, and claims for benefits from an DISH-sponsored "employee benefit plan," as that term is defined in 29 U.S.C. § 1002(3). Further, and notwithstanding the foregoing, DISH shall have the right to seek any temporary restraining orders, preliminary and/or permanent injunctions in a court of competent jurisdiction based on DISH's claims that the Employee is violating DISH's rights regarding (1) non-competition agreements or obligations and/or (2) intellectual property...and/or (3) confidential information . . .

The right to a trial, to a trial by jury, and to common law claims for punitive and/or exemplary damages are of value and are waived pursuant to this agreement.  Other than potential rights to a trial, a jury trial, and common law claims for punitive and/or exemplary damages, nothing in this Agreement limits any statutory remedy to which the Employee may be entitled under law.

CLAUSE CONSTRUCTION AWARD - 2

EXHIBIT 1

Claimant submitted his Demand for Arbitration ("Demand") and his Class and Collective Action Complaint to the AAA on May 7, 2015.  Claimant subsequently submitted an Amended Class and Collective Action Complaint ("Amended Complaint") to the AAA on August 25, 2015. The Amended Complaint alleges that DISH violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.,* the Colorado Wage Claim Act, C.R.S. §8-4-101 and the Colorado Minimum Wage Act, C.R.S. §8-6-101 as implemented by the Colorado Minimum Wage Order by failing to pay straight time pay and/or "time and one-half" premium overtime pay for all regular and/or overtime hours worked by its employees.   The Amended Complaint also alleges an employment-related breach of contract claim.   Claimant's Amended Complaint also seeks a determination that "the action is properly maintained as a class and/or collective action. . .."

Respondents deny all of Claimant's claims and specifically deny that this matter may be brought as a class or collective action.  (Answer, submitted July 16, 2015.)

Claimant is represented in this matter by his counsel, Brian D. Gonzalez, Law Offices of Brian D. Gonzalez.  Respondents are represented by their counsel, Meghan W. Martinez, Dayna L. Dowdy, Martinez Law Group, P.C.

An initial Preliminary Hearing was held by telephone conference with the undersigned arbitrator in this matter on August 24, 2015.  Procedural Order No. 1, issued following that hearing, set a schedule for the parties to submit briefs on the Clause Construction Phase of this arbitration (*see* the Class Arbitration Rules, Rule 3, discussed below).  Subsequently, the parties' briefs were timely submitted.  Pursuant to notice, a telephonic hearing for the purpose of hearing oral argument on the clause construction issues was held on November 16, 2015.  At my request, supplemental briefs were submitted on one point following the hearing, and the clause construction issues were submitted for decision.

## II.    DISCUSSION.

**The Clause Construction Issue.**  Rule 3 of the Class Arbitration Rules provides:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial

CLAUSE CONSTRUCTION AWARD - 3

EXHIBIT 1

review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.[1]

**The Parties' Agreement.**   The terms of the Arbitration Agreement at issue in this case are quoted, in relevant part, above.   By its terms, the Arbitration Agreement provides that it is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA").

The parties agree that Colorado law governing interpretation of contracts should be applied to construction of their arbitration agreements.   Procedural Order No. 1, ¶2.

**The Parties' Contentions.**   Claimant contends that the Arbitration Agreement should be construed as permitting the arbitration to proceed either as a class or collectively for two main reasons:    First, Claimant contends that the language of the relevant agreements ("any claim, controversy and/or dispute. . . arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment. . . shall be resolved by arbitration") broadly permits either class or collective arbitration.   Second, Claimant contends that Colorado rules of contract interpretation confirm that the Arbitration Agreement should be construed as permitting class and collective arbitration, and also require any ambiguities to be construed against DISH, the drafter.

Respondents dispute these conclusions.   First, Respondents argue that the Arbitration Agreement does not confer jurisdiction on this arbitral tribunal to determine the arbitrability of a class and collective proceeding; Respondents argue that this threshold jurisdictional issue must be decided in the courts.   Second, Respondents argue that the relevant contract language, construed as a whole, and as required under Colorado law, does not permit class or collective arbitration, but rather permits only bilateral arbitration of disputes arising between DISH and the signatory employee, individually.

### A.   DOES THIS ARBITRAL TRIBUNAL HAVE JURISDICTION TO DETERMINE THE ARBITRABILITY OF CLAIMANT'S CLAIMS FOR A CLASS OR COLLECTIVE ARBITRATION PROCEEDING?

---

[1]      If the Clause Construction Award is not challenged, or if it is challenged and survives judicial review, Rules 4-6 of the Class Arbitration Rules provide that the next phase of the proceedings must address class certification issues.   If a Class Determination Award is issued certifying a class, Rule 5(d) provides for another stay for the purpose of also permitting judicial review of that award, if desired, before any hearing on the merits.

CLAUSE CONSTRUCTION AWARD - 4

EXHIBIT 1

Certain "gateway issues," such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy, are generally reserved for the courts, rather than for arbitrators to decide.  *Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444, 452 (2003) (plurality opinion).  *See also AT&T Technologies, Inc. v. Comm. Workers of Am.,* 475 U.S. 643, 649 (1986); *Galbraith v. Clark,* 122 P.3d 1061, 1063-64 (Colo.App. 2005).  The parties to an arbitration agreement, however, may agree to allow the arbitrator rather than the courts to decide even such "gateway issues" if their arbitration agreement clearly and unmistakably indicates that they intended to do so.  *Rent-a-Center, West Inc. v. Jackson,* 561 U.S. 63, 68-69 (2010); *First Options of Chicago v. Kaplan,* 514 U.S. 938, 943 (1995); *AT&T, supra, 475 U.S. at 649.*

As discussed above, Respondents contend that the Arbitration Agreement does not confer jurisdiction on this arbitral tribunal to determine the arbitrability of a class and collective proceeding; Respondents argue that this threshold jurisdictional issue must be decided by a court.  This argument was not established, for two main reasons.

First, the issue raised here – whether this arbitration may proceed as a class or collective arbitration – does not fall into the "narrow exception" created by *AT&T* and *First Options, supra.*  "It concerns neither the validity of the arbitration clause[2] nor its applicability to the underlying dispute between the parties.  Unlike *First Options,* the question is not whether the parties wanted a judge or an arbitrator to decide *whether they agreed to arbitrate a matter. . .* Rather the relevant question here is *what kind of arbitration proceeding* the parties agreed to.  That question . . . concerns contract interpretation and arbitration procedures.  Arbitrators are well-suited to answer that question.  Given these considerations, along with the arbitration contracts' sweeping language concerning the scope of the questions committed to arbitration,[3] this matter of contract interpretation should be for the arbitrator, not the courts."  *Green Tree, supra,* 539 U.S. at 452-453, *citing cases* (citations omitted; emphasis in original).  Absent application of the "narrow exception," the FAA requires enforcement of the parties' agreement to arbitrate covered disputes.  "And if there is doubt about. . . the scope of arbitrable issues. . . we should resolve that doubt in favor of arbitration."  *Green Tree, supra,* 539 U.S. at 452 (internal quotation marks omitted), *citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985).

The conclusions reached above on this point are consistent with the analysis adopted by the Tenth Circuit in *Quilloin v. Tenet HealthSystem Phila., Inc.,* 673 F.3d 221, 232 (10th Cir. 2012).

---

[2]      Indeed, the Arbitration Agreement here expressly requires the Employee to acknowledge "that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., and is fully enforceable."

[3]      As discussed in more detail below, the Arbitration Agreement here uses equally broad language to describe covered disputes.  The present agreement requires arbitration of "any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment" except for certain specifically-enumerated exceptions.

EXHIBIT 1

Second, even if the present case did fall within the "narrow exception" for "gateway matters" created by *AT&T* and *First Options, supra,* the parties here clearly and unmistakably expressed their intention that questions of arbitrability be resolved by the arbitrator rather than in the courts.  They did so in two ways.

(i)  They expressly agreed that their Arbitration Agreement required arbitration of "any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment" except for certain specifically-enumerated exceptions.  No such exception to this broad and sweeping language is enumerated for the determination of arbitrability of Claimant's claims for a class or collective arbitration proceeding.  Absent such an exception, this language - "*any* . . . controversy and/or *dispute* between them. . . *in any way related to Employee's* . . . *employment. . .* " - is sufficiently broad to clearly and unmistakably encompass the present dispute over whether the arbitrator or the courts must make the determination as to whether claimant's claims for a class or collective arbitration are arbitrable.

(ii)  The Arbitration Agreement expressly provides that the arbitration must be conducted "under the then current procedures of the AAA's National Rules for the Resolution of Employment Disputes ("Rules")."  Those Rules expressly provide:

> 6.  Jurisdiction
>
> a.  The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement. . .

The parties' express incorporation by reference of this Rule reflects a clear intention to empower the arbitrator to decide both jurisdiction and arbitrability questions.  For this reason, numerous courts have held that parties' agreement to apply such institutional arbitral rules manifests a clear and unmistakable intention to have the arbitrator determine arbitrability issues.  *See, e.g., Ahluwalia v. QFA Royalties, LLC*, 226 P.3d 1093, 1099 (Colo App. 2009) ("by incorporating the AAA Commercial Arbitration Rules into the agreement, the parties authorized the arbitrator to decide arbitrability issues....")(*citing cases*); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,* 787 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.,* 559 F.3d 874, 878 (8th Cir. 2009);  *Qualcomm, Inc. v. Nokia Corp.,* 466 F.3d 1366, 1372-73 (Fed. Cir. 2006). *See also Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., Inc.,* 251 P.3d 1091, 1094 (Colo. App. 2010) ("parties may incorporate by reference AAA rules by expressly providing that those rules will govern any dispute within the scope of their arbitration agreement. . . such incorporation constitutes clear and unmistakable evidence of the parties' intent to delegate that issue to the arbiter")(*dicta*).  I find the reasoning of these cases persuasive and adopt it

CLAUSE CONSTRUCTION AWARD - 6

EXHIBIT 1

here.[4]  I also note that the process mandated by Rule 3 of the Class Arbitration Rules expressly guarantees both parties to this case the right to seek judicial review of this Clause Construction Award following its issuance.

For these reasons, I determine that this arbitral tribunal has jurisdiction to decide the clause construction issues raised by the parties and discussed below.[5]

**B.      INTERPRETATION OF THE PARTIES' ARBITRATION AGREEMENT.**

**1.      Recent U.S. Supreme Court Guidance.**   Several recent U.S. Supreme Court decisions establish the standards to be applied in making the clause construction determination required under Rule 3 in cases, such as the present arbitration, subject to FAA.

First, class arbitration is a matter of consent; an arbitrator may employ class procedures only if the parties have authorized them.   A party may not be compelled to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so. *Oxford Health Plans v. Sutter,* 135 S.Ct. 2064, 2067-70 (2013); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 682-84 (2010).

Second, when making a clause construction determination the arbitrator's task is to interpret and enforce a contract, not to make public policy.  *Id.*

Third, such a determination must ensure that private agreements to arbitrate are enforced according to their terms; in this endeavor, as with other issues of contractual interpretation, the parties' intentions control.  *Stolt-Nielsen, supra,* 559 U.S. 662, at 682-83.  *See generally, Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 476-78 (1989).

---

[4]      *But see Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.* , 157 F.3d 775, 780-81 (10th Cir. 1998) and *St. Charles v. Sherman & Howard LLC* 2015 WL 1887758 (D. Colo. April 24, 2015).  I adopt the reasoning of the cases cited above in text in preference to the contrary views stated in these two cases because *Ahluwalia* and *Taubman* both clearly state Colorado law on this point, while *Riley* interpreted Florida and Kansas law and did not squarely address the scope of arbitrator jurisdiction in a case governed by Colorado law where the arbitration agreement explicitly incorporates AAA Rules.  *Riley, supra,* 157 F.3d 775, 780-81 (10th Cir. 1998).  In addition, *Riley,* unlike the present case, involved an ambiguity arising from a settlement that "terminate[ed] and supersede[d] any and all prior representations and agreements," and "more importantly...include[ed] no arbitration provision."  *Id.* at 778.  *St. Charles, supra,* relied solely on *Riley* with no analysis.  2015 WL 1887758, *3 (D. Colo. April 24, 2015).

[5]      This determination is based on the factors discussed above in text.  Based on the contents of Respondents' Answer, Claimant's additional argument that I should find jurisdiction here because the Respondents' jurisdictional objection was not timely raised as required by Section 6(c) of the Rules is denied.

CLAUSE CONSTRUCTION AWARD - 7

EXHIBIT 1

Fourth, parties are generally free to structure their arbitration agreements as they see fit; this includes the freedom to specify with whom they choose to arbitrate their disputes. *Id.* For example, parties, if they choose to do so, may agree to arbitration agreements that do not permit class arbitration of a federal-law claim. *American Express Co. v. Italian Colors Restaurant*, 13 S.Ct. 2304, 2308 (2013); *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011).

Fifth, an implicit agreement to authorize class-action arbitration is not a term that an arbitrator may infer solely from the fact that the parties entered into an agreement to arbitrate. *Stolt-Nielsen, supra,* 559 U.S. 662, at 685-87 (". . . the differences between bilateral and class action arbitration are too great for arbitrators to presume. . . that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings. . .we see the question as being whether the parties *agreed to authorize* class arbitration")(emphasis in original).

### 2.   Interpretation of the Parties' Arbitration Agreement.

The parties in the present case have not made any stipulation that their Arbitration Agreement is silent on class or collective arbitration.  In this respect, the facts of the present case differ from those at issue in *Stolt-Nielsen:*

> The parties in Stolt-Nielsen had entered into an unusual stipulation that they had never reached an agreement on class arbitration. . .  In that circumstance, . . . the [arbitration] panel's decision was not - indeed, could not have been - "based on a determination regarding the parties' intent." "Th[e] stipulation left no room for an inquiry regarding the parties' intent."

*Oxford Health Plans, supra,* 133 S.Ct. 2064, at 2069-70 (citations omitted.)

No such stipulation exists in the present record.  Accordingly, the parties' intent must be determined from the language used in their Arbitration Agreement as construed under Colorado law.

### a.   Analysis of the Language Used in the Arbitration Agreement.

Under Colorado law, in order to determine whether the parties have agreed to submit a particular issue to arbitration, state law principles governing contract formation and interpretation are to be followed.  The primary goal of interpretation of a contract is to give effect to the expressed intention of the parties.   The intent of the parties to a contract is to be determined primarily from the language of the instrument itself, according the language used in the agreement its plain and ordinary meaning unless the agreement specifies otherwise.   *See Ad Two, Inc. v. City & Cty. Of Denver,* 9 P.3d 373, 376 (Colo. 2000); *City & Cty. of Denver v. Dist. Ct.,* 939 P.2d 1353, 1361 (Colo. 1997); *Cache National Bank v. Lusher,* 882 P.2d 952 (Colo. 1994); *BFN-Greeley, LLC v. Adair Grp., Inc.,* 141 P.3d 937, 940 (Colo. App. 2006).

CLAUSE CONSTRUCTION AWARD - 8

EXHIBIT 1

Based on my review of the Arbitration Agreement and the parties' submissions concerning it, and applying the above standards, I believe that six features of the language the parties chose to use in their agreement shed important light on their intentions concerning the clause construction issues.  Three of these factors favor adopting the conclusions urged by Claimant.  The other three militate in favor of the conclusions urged by Respondents.  Some of these factors should be accorded greater weight than others in construing the parties' Arbitration Agreement.  The six factors are discussed below in descending order reflecting the significance I have concluded they should be accorded.  Finally, somewhat different conclusions are warranted with regard to Claimant's FLSA claims than with regard to Claimant's state law statutory and breach of contract claims.

**First,** the language used in the Arbitration Agreement to define the scope of arbitrable controversies is clearly broad enough to encompass the FLSA and other claims alleged in the Amended Complaint.  As discussed above, the parties agreed that their Arbitration Agreement required arbitration of "any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment" except for certain specifically-enumerated exceptions.

This is extremely broad language.  The term "any" is used to modify "claim, controversy and/or dispute" with no restriction or limitation, except for six specifically-enumerated exceptions that appear later in the agreement (discussed below), none of which addresses class or collective proceedings.  "Read naturally, the word 'any' has an expansive meaning. . .."  *U.S. v. Gonzalez*, 520 U.S. 1, 5 (1997).  *Compare, Ad Two, Inc. v. City & Cty. Of Denver,* 9 P.3d 373, 376 (Colo. 2000)(contract language "must be examined and construed in harmony with the plain and generally accepted meaning of the words employed.")  The parties' use of the phrases "*any claim, controversy and/or dispute between them*, arising out of and/or *in any way related to Employee's* application for employment, *employment* and/or termination of employment" (emphasis added) are certainly broad enough to encompass the particular types of "claims" at issue here – all of which unquestionably "relate to" Claimant's employment.   In particular, the language used plainly covers the FLSA and companion state law statutory claims alleged by Claimant.

As the Supreme Court authorities referenced above make clear, however, even a clear agreement to arbitrate a particular "claim," without more, does not establish a companion intention to authorize class or collective arbitration of the otherwise arbitrable claim.

In the present case, however, the Arbitration Agreement does not require arbitration simply of covered "claims."  Rather, as discussed above, it requires arbitration of "*any* claim, *controversy and/or dispute between them*, arising out of and/or *in any way related to Employee's* application for employment, *employment* and/or termination of employment" (emphasis supplied.) The generally prevailing meaning of the words used here, including in particular the expansive term "any," the express inclusion of "any controversy and/or dispute" alongside "any  . . . claim," and the broad scope connoted by "in any way related to Employee's . . . employment. . ." all strongly indicate that the parties intended to make all types of disputes

CLAUSE CONSTRUCTION AWARD - 9

EXHIBIT 1

relating to the signatory employee's employment relationship with DISH arbitrable.   The language used here reasonably can be construed as broad enough to suggest that the parties intended to require arbitration of all types of controversies and disputes, including class or collective arbitrations of covered types of claims, related to the signatory employee's employment relationship with DISH.   *See, e.g., Sutter v. Oxford Health Plans LLC,* 675 F.3d 215, 218, 223 (3d Cir. 2012) (*aff'd* 133 S.Ct. 2064 (2013)); *Jock v. Sterling Jewelers Inc.,* 646 F.3d 113, 116-17, 126-27 (2d Cir. 2011); *Rame, LLC v. Popovich,* 878 F.Supp.2d 439, 449, 453 (S.D.N.Y. 2012).

The parties' use of this broad language is also significant here for an additional reason related to one of the types of claims now at issue:  The FLSA expressly provides for collective arbitration as a matter of express statutory entitlement, and has done so since long before drafting or execution of the Arbitration Agreement at issue here.   The statute expressly provides that a claim for overtime pay brought under the FLSA can be maintained by "one or more employees for and in behalf of himself and themselves and other employees similarly situated" but subject to the requirement that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party. . .." 29 U.S.C. §216(b). *See Hoffman La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989)("Congress has stated its policy that [FLSA] plaintiffs should have the opportunity to proceed collectively.") Thus, the right to proceed collectively, subject to the "opt-in" requirement, is an express statutory incident of the type of "claim" at issue here. *See De Ascensio v. Tyson Foods, Inc.,* 342 F.3d 301, 305-06 (3rd Cir. 2003).[6]

The foregoing observation is not intended as an expression of opinion, of the sort forbidden in *Stolt-Nielsen,* by this arbitral tribunal as to whether the statutory right to bring FLSA claims collectively is desirable public policy or not.   Rather, this feature of an FLSA claim, authorized by the statute, is significant to proper construction of the language the parties used in their Arbitration Agreement.   As discussed above, the parties unquestionably intended to make employment-related "claims" arbitrable.   One such "claim," at issue here, is defined by the FLSA statute as including an entitlement to proceed collectively.   Absent some textual indication in the Arbitration Agreement that the parties only intended to make a part of this particular "claim" arbitrable – and the agreement contains no such language – the most natural interpretation of the language used by the parties in their Arbitration Agreement is that they intended to make the entire FLSA "claim," including the statutorily-authorized right to proceed collectively, arbitrable.

---

[6]     The "collective" actions authorized by Section 216(b) for FLSA claims depart from usual class action procedure in important respects.   In particular, Congress conditioned its authorization of "collective" FLSA actions on requiring putative class members to "opt in" rather than "opt out." *See, e.g., Grayson v. K Mart Corp.,* 79 F.3d 1086, 1106 (11thCir. 1996)(by adopting "the opt-in joinder procedures of section 216(b) of the FLSA" Congress "impliedly rejected the Rule 23 class action procedures"); *Kelly v. Alamo,* 964 F.2d 747, 748 (8th Cir. 1992).

EXHIBIT 1

Nothing in the broad language used by the parties here to describe the scope of arbitrable claims shows any intent to make only a portion of an Employee's FLSA "claim" arbitrable, or to make only some portions of a claim arising under 29 U.S.C. §201-219 arbitrable but not other portions.  Rather, the parties expressly agreed to make "any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment" with DISH arbitrable.   This language broadly makes the entirety of an Employee's FLSA claim arbitrable, not just part of such a claim.   In addition, the parties' use of the phrase "*any . . . controversy and/or dispute* between them. . .in any way related to Employee's . . . employment" signals an intention to make "controversies" and "disputes," as well as "claims," arbitrable.  This language is broad enough to require arbitration of controversies or disputes over whether arbitration of a covered FLSA claim must also include the collective proceedings authorized by the statute.

For these reasons, I find that the broad, inclusive language used by the parties in their Arbitration Agreement is a factor that provides significant support for the conclusions urged by Claimant on the clause construction issues.  Except for the enumerated exceptions discussed below, the language used in the Arbitration Agreement requires "any" employment-related disputes to be arbitrated.  I further find that this conclusion applies with even greater force to Claimant's FLSA claims, where the "claim" designated as arbitrable by the Arbitration Agreement has been defined by Congress as including the right to proceed by way of "opt-in" collective proceedings.

**Second,** as discussed above, the Arbitration Agreement requires arbitration of "any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment" except for certain specifically-enumerated exceptions.   In particular, the agreement enumerates six specific exceptions to the broad description of arbitrable matters (in brief, the agreement excludes from arbitrability Employee claims for unemployment compensation, workmen's compensation and ERISA plan benefits, and DISH claims for injunctive relief related to non-competition agreements, intellectual property and confidential company information).  No such exclusion is made for class or collective arbitration proceedings.  The omission of any such exclusion, in an agreement that does expressly list six other exclusions, indicates that the parties did not intend such an exclusion for class or collective proceedings from the Arbitration Agreement's broad description of arbitrable matters.   The omission is additionally telling, because the Arbitration Agreement affirmatively advises the Employee of four features of court proceedings that are "of value and are waived by this agreement" – these are enumerated as "[t]he right to a trial, to a trial by jury, and to common law claims for punitive and/or exemplary damages" - but makes no mention of forfeiture or sacrifice of class action rights.  A reasonable employee reading this language, together with the agreement's broad definition of arbitrable matters and the enumerated list of six express exclusions from the duty to arbitrate, would not reasonably construe this language as also containing either an unexpressed seventh exclusion from arbitrable matters or as containing an unexpressed fifth exclusion from the list of valuable rights waived by the agreement – the right to proceed by class or collective proceedings.

CLAUSE CONSTRUCTION AWARD - 11

EXHIBIT 1

For these reasons, I find that the Arbitration Agreement's enumerated list of six exceptions to the universe of arbitral disputes, and its list of four valuable rights and claims associated with judicial proceedings that will be waived by signing the agreement, both of which lists omit any mention of class or collective proceedings, constitute a second important factor that militates in favor of the conclusions urged by Claimant on the clause construction issues.

**Third,** finding a reasonable interpretation of the Arbitration Agreement's penultimate paragraph is extremely difficult to reconcile with the construction of the agreement now urged by Respondents.  That paragraph reads as follows:

> The right to a trial, to a trial by jury, and to common law claims for punitive and/or exemplary damages are of value and are waived pursuant to this agreement.  Other than potential rights to a trial, a jury trial, and common law claims for punitive and/or exemplary damages, nothing in this Agreement limits any statutory remedy to which the Employee may be entitled under law.

If, as Respondents contend, the agreement was intended to bar an Employee from class or collective arbitration proceedings, this language becomes problematical in respects difficult to assume the parties mutually intended at the time of contracting.  Specifically, as discussed above, the FLSA expressly provides for collective arbitration as a matter of express statutory entitlement and the above-quoted paragraph promises that, except for loss of "potential rights to a trial, a jury trial, and common law claims for punitive and/or exemplary damages*, nothing in this Agreement limits any statutory remedy to which the Employee may be entitled under law."* (Emphasis supplied).[7]   If the agreement is construed as now urged by Respondents, however, it would preclude exercise of the Employee's FLSA statutory right to proceed collectively on a claim.  Contrary to the promise made to the Employee in the paragraph's last sentence, such a construction would limit the exercise of a statutory remedy to which the Employee is entitled under FLSA.  In addition, as discussed above, the quoted paragraph recites four "valuable" aspects of judicial proceedings that the Employee agrees to waive by signing the agreement, but says nothing about its position, as now asserted here, that an Employee who signs the agreement would also be waiving his valuable entitlement to proceed by way of class

---

[7]      Respondents' effort to explain this language away by drawing a law dictionary distinction between "remedies" and "procedures" (R.Opp. Br., at 19-20) was unpersuasive and not established.  *See Ad Two, Inc. v. City & Cty. Of Denver, supra,* 9 P.3d 373, at 377 (Colo. 2000)(". . .we should not allow a hypertechnical reading of the language in a contract to defeat the intentions of the parties.")  Respondents' argument was particularly unpersuasive given the fact that the last sentence of the agreement's penultimate paragraph conjoins its reference to "any statutory remedy" with an earlier reference, in the same sentence, to "potential rights" in a manner that suggests these terms are intended as equivalents.

EXHIBIT 1

or collective proceedings.  It is difficult to assume that the parties mutually intended their penultimate paragraph to have such a misleading effect.

An employee's Section 216(b) entitlement to proceed collectively is also a "valuable" right that can reduce significant burdens that otherwise might preclude bringing an individual claim for amounts not large enough, individually, to warrant maintaining an action.[8]  In addition, the conclusions now urged by Respondents would require an interpretation of the Arbitration Agreement as requiring arbitration of Claimant's individual FLSA claims but simultaneously prohibiting arbitration of the collective proceedings authorized by Section 216(b).  Nothing in the language used in the Arbitration Agreement expressly authorizes such an interpretation. Such a construction of the parties' language is a bit like saying that although the agreement states that they intended to make "any" FLSA "claim" arbitrable, they actually intended this language to mean that only a portion of FLSA "claims," without the right to collective proceedings, or, by analogy, with a shortened statute of limitations or with a restricted scope of possible remedies, could be arbitrated.  If the parties had intended any such major restriction on the scope or content of the FLSA claims they were otherwise agreeing to arbitrate, one would have expected at least some reference to such a restriction in the language of their agreement.  Interpretation of the relevant language as requiring arbitration of "any" FLSA "claim" but as also connoting an unexpressed intent to exclude from arbitrability the component of that claim authorized by Section 216(b) is a doubtful construction of the language the parties chose to use.

Once again, the foregoing observation is not intended as an expression of opinion, of the sort forbidden in *Stolt-Nielsen,* by this arbitral tribunal as to whether waiver of the statutory right to bring FLSA claims collectively is desirable public policy or not.  Rather, the omission of that right from the list of other "valuable" rights listed by the parties as waived by the Arbitration Agreement is significant to proper construction of the language the parties used in the penultimate paragraph of their agreement:  If, as Respondents contend, the parties mutually intended to bar collective proceedings on FLSA claims, it is difficult to understand or interpret the omission of this right from their agreement's list of other "valuable" rights waived by the agreement to arbitrate.

If, on the other hand, it is assumed, as Claimant contends, that the parties did not intend the agreement to bar class or collective proceedings, all of these interpretational difficulties with construction of the penultimate paragraph are avoided.  In that scenario, the paragraph accurately lists the "valuable" rights waived by the Employee, and the paragraph also contains no misleading content concerning whether statutory remedies promised under FLSA would be limited by the agreement.

---

[8]     This circumstance distinguishes the FLSA claims at issue here from the state law claims alleged by Claimant, which include no such statutory guarantee of entitlement to proceed collectively.  Parties seeking class treatment of those other types of claims must rely on the procedural rules of a particular judicial forum, *e.g.,* Fed.R.Civ.P. 23 in the federal court system.

CLAUSE CONSTRUCTION AWARD - 13

EXHIBIT 1

On balance, I find that the troubling issues potentially raised by the agreement's penultimate paragraph, if the remainder of the agreement is construed as now urged by Respondents, constitute a third factor that militates significantly in favor of the conclusions urged by Claimant on the clause construction issues.  The more reasonable interpretation of this language is that the parties did not intend the penultimate paragraph to be either misleading or unfair; rather, inclusion of the paragraph indicates that they did not intend the agreement as a whole to bar class or collective arbitration proceedings.  I further find that this factor applies with particular force to Claimant's FLSA claims, for the reasons discussed above.

**Fourth,** the language used in the Arbitration Agreement does not expressly or specifically authorize class or collective arbitration, by name, as a permitted procedure in this case.  For the reasons discussed above, I do not find that the Arbitration Agreement is "silent" on the subject of whether class or collective arbitration proceedings are arbitrable.  I do find, however, that the agreement's failure to expressly or specifically authorize class or collective arbitration, by name, as a permitted procedure in this case, constitutes a factor that militates in favor of the conclusions urged by Respondents on the clause construction issues.  If what we want to know is whether the parties mutually intended to authorize arbitration of class or collective proceedings, the fact that their agreement does not expressly or specifically so state must be counted as a factor supporting Respondents' arguments.

I do not place undue emphasis on this factor in the present case, however, for several reasons.  First, although the language used in the Arbitration Agreement does not specifically authorize class or collective arbitration, by name, as a permitted procedure in this case, the language used also does not specifically forbid class or collective arbitration as an impermissible procedure in this case.  Second, "*Stolt-Nielsen* did not establish a bright line rule that class

arbitration is allowed only under an arbitration agreement that incants 'class arbitration' or otherwise expressly provides for aggregate procedures."  *Sutter v. Oxford Health Plans LLC*, *supra*, 675 F.3d 215, at 222 (3d Cir. 2012) (*aff'd* 133 S. Ct. 2064 (2013).  Although *Stolt-Nielsen* requires a contractual basis for any finding that the parties intended to permit class arbitrations, it does not require such agreements to expressly recite the permissibility of class arbitration, by name, if the rest of the agreement affords an alternative contractual basis supporting such a conclusion.  Third, as discussed above, the Arbitration Agreement's failure to expressly recite the permissibility of class arbitration must be read together with its sweeping definition of arbitrable matters, its omission of class arbitration from the enumerated list of six types of issues expressly declared to be non-arbitrable and its penultimate paragraph.

**Fifth**, the language used in the Arbitration Agreement contains numerous references that apparently contemplate bilateral rather than class proceedings.  Such references include the following:

> In consideration of *the Employee's* employment by
> DISH (and/or any of its affiliates) as good and valuable
> consideration, the receipt and sufficiency of which are
> hereby acknowledged, *the Employee and DISH agree that*

CLAUSE CONSTRUCTION AWARD - 14

EXHIBIT 1

any claim, controversy and/or dispute *between them*, arising out of and/or in any way *related to Employee's* application for employment, *employment* and/or termination of employment, whenever and wherever brought, shall be resolved by arbitration. *The Employee agrees* that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., and is fully enforceable. . .

Notwithstanding the foregoing, this agreement to arbitrate all claims *shall not apply to Employee claims* for statutory unemployment compensation benefits, statutory worker's compensation benefits, and claims for benefits from an DISH-sponsored "employee benefit plan," as that term is defined in 29 U.S.C. § 1002(3). Further, and notwithstanding the foregoing, *DISH shall have the right to seek* any temporary restraining orders, *preliminary and/or permanent injunctions* in a court of competent jurisdiction *based on DISH's claims that the Employee is violating* DISH's rights regarding (1) non-competition agreements or obligations and/or (2) intellectual property...and/or (3) confidential information . ...

The right to a trial, to a trial by jury, and to common law claims for punitive and/or exemplary damages are of value and are waived pursuant to this agreement. Other than potential rights to a trial, a jury trial, and common law claims for punitive and/or exemplary damages, nothing in this Agreement limits any statutory remedy to which *the Employee* may be entitled under law.

(Emphasis added.) The italicized language supports Respondents' argument that the parties intended the Arbitration Agreement to be a bilateral contract running only between DISH and the single signatory employee. On balance, the parties' use of such language in their agreement is a factor that supports the conclusions urged by Respondents on the clause construction issues. The parties' use of such language suggests that they intended their Arbitration Agreement to cover only a "claim, controversy and/or dispute" brought by the signatory employee individually, and not claims asserted by anyone else.

This conclusion is not free from doubt, however, for several reasons. First, as some other courts have noted, bilateral language of the sort emphasized here by Respondents is not by itself a conclusive tool for determining whether parties intended to bar class or collective

arbitration. In particular, phrases such as "you" and "your employment" do not expressly disclaim collective arbitration proceedings and do not necessarily signal an intent to preclude collective or class arbitration.

> Phrases such as "between Client and LHDR" and "this agreement" are routine contract terms that do not expressly disclaim class litigation.  All contracts are necessarily written between the parties to a transaction; if the identification of the parties or reference to "this agreement" precluded class litigation, class claims could never stem from contracts.  This is obviously not the case . . . Based on Supreme Court precedent and the persuasive authority cited here, the phrases "between Client and LHDR" and "this agreement" do not exclude class claims . . ..

*Harrison v. Legal Helpers Debt Resolution LLC, et al.,* 2014 WL 4185814, *5-6 (D. Minn. Aug. 22, 2014), *citing cases* "that have also found silence on the issue of class arbitration despite language similar to the Agreement here*." See, e.g., Quillon v. Tenet HealthSystem, Phila., Inc.,* 673F.3d 221, 225-26 (10th Cir.2012)(arbitration clause covering claims between "Company and I"); *Kovachev v. Pizza Hut, Inc.,* No. 12 C 9461, 2013 WL 4401373, at *1 (N.D. Ill.Aug. 15, 2013) (parties limited arbitration to "Pizza Hut and I"); *Kenneth J. Lee v. JPMorgan Chase & Co.,* 982 F.Supp.2d 1109 (C.D.Cal. 2013)(arbitration clause covered any disputes related to "my employment . . . with Washington Mutual;" the "interpretive [question] of whether or not the agreements authorize Plaintiffs to pursue their claims on a class, collective or representative basis" reserved to the arbitrator for decision); *Guida v. Home Sav. of Am., Inc.,* 793 F.Supp.2d 611, 613 (E.D.N.Y. 2011)(plaintiffs each had identical arbitration clauses covering "claims in connection with my employment;" the issue of "whether or not the plaintiffs in this case can proceed on a class basis" reserved to arbitrator for decision).  Thus, although the bilateral language relied upon by Respondents generally supports their proposed interpretation of the Arbitration Agreement, such language does not expressly or conclusively require interpretation of the agreement as precluding collective arbitration.  If the bilateral language were construed as was done in the other authorities cited above, reading the bilateral language together with the agreement's other key language (its  broad definition of arbitrable matters, its omission of class arbitration from the enumerated list of six types of issues expressly declared to be non-arbitrable and its penultimate paragraph, all discussed above) could reasonably yield an overall construction of the agreement closer to the one favored by Claimant than to the one urged by Respondents.

Moreover, as also discussed above, one of the particular types of claim at issue here – the FLSA claim – includes as a statutorily-prescribed incident of such a claim the Section 216(b) right to proceed collectively when the opt-in requirement is satisfied.  This right is held by the individual signatory employee, and thus constitutes part of that individual employee's arbitrable "claim," as defined by Congress both before and at the times the Arbitration

CLAUSE CONSTRUCTION AWARD - 16

EXHIBIT 1

Agreement was executed.[9]  Thus, even allowing for the recurring bilateral language emphasized by Respondents, the Arbitration Agreement may have been intended to make all aspects, as defined by Congress, of the FLSA claim held by the "Employee" - *i.e.,* the individual signatory employee - arbitrable.

**Sixth**, the Arbitration Agreement includes a requirement that the proceedings be kept confidential:

> . . . A single arbitrator engaged in the practice of law from the American Arbitration Association ("AAA") shall conduct the arbitration under the then current procedures of the AAA's National Rules for the Resolution of Employment Disputes ("Rules").  Regardless of what the above-mentioned Rules state, all arbitration proceedings, including but not limited to hearings, discovery, settlements, and awards shall be confidential . . ..

Respondents argue that this requirement "is inapposite to AAA class arbitrations and the corresponding rules." (R. Opp. Br., at 5.)  I agree with Respondents that this language indicates an intention of the parties to depart from the AAA's otherwise-applicable rules to the extent necessary to ensure the confidentiality of the proceedings.  To this limited extent, the above-quoted language lends some support to Respondents' position on the clause construction issues.

On the other hand, the usual and ordinary meaning of that language cannot reasonably be construed as a veiled or implicit ban on class arbitration, and I decline to so construe it. Moreover, Rule 9(a) of the Class Arbitration Rules empowers arbitrators in such cases to control the extent to which particular information is made public.  In addition, if the present case proceeds beyond the clause construction phase, numerous additional traditional measures such as limitations on the scope of discovery, protective orders, redactions, restrictions on parties' access to particular documents or parts of documents, bifurcation, use of experts or special masters, and many other tools are available to ensure that the entirety of this proceeding could be conducted without contravening the above-quoted confidentiality provision.  Based on the record presented, Respondents have not established that proceeding with this matter as a class

---

[9]     This observation is not intended to express any view on whether the FLSA's inclusion of a right to proceed collectively in its delineation of an FLSA claim constitutes sound public policy or not.  Rather, the significance of the observations made above in text is that the individual, signatory Employee's FLSA "claim" includes the right, provided in 29 U.S.C. §216(b), to proceed collectively.  Even if Respondents' arguments concerning the bilateral language used in the agreement are given appropriate weight, the fact remains that the agreement designates as arbitrable a type of claim that, by its terms, as enacted by Congress, entitles the signatory Employee to bring the claim collectively.

CLAUSE CONSTRUCTION AWARD - 17

EXHIBIT 1

arbitration under the AAA´s Class Arbitration Rules would necessarily result in any breaches of the contractual confidentiality provision referred to above.

For these reasons, the confidentiality provision provides some support for Respondents' position on the clause construction issues but does not require an implied limitation on the scope of the parties' Arbitration Agreement to prohibit class arbitrations.

**Conclusions.**   Reviewing these six factors together, I conclude that the Arbitration Agreement, properly construed, permits "opt-in" collective arbitration of Claimant's FLSA claims.  The first three factors discussed above apply with particular force to those claims, and the fifth factor discussed above applies at best weakly to those claims because the signatory employee's FLSA "claim" is defined by statute to include the right to proceed collectively.  For the reasons given above, I conclude that those considerations outweigh the countervailing considerations concerning the other factors discussed above.  Accordingly, I conclude that the Arbitration Agreement permits the present arbitration to proceed on an "opt-in" collective basis, as provided in Section 216(b), as to Claimant's FLSA claims.

The record submitted presented a closer case as to whether the Arbitration Agreement, properly construed, was intended to authorize "opt-out" class action arbitration of Claimant's Colorado statutory claims or of his breach of contract claim.  It is appropriate for the clause construction inquiry to insist on a more explicit expression of mutual intent to permit class arbitration of claims arising under such statutes than with the FLSA claims, where the entitlement to proceed collectively is defined by the underlying statute itself as an integral incident of the "claim" the parties agreed to arbitrate.  Applying that standard, I conclude that the language employed by the parties in the Arbitration Agreement creates substantial and legitimate doubt as to whether that agreement was intended to permit or to preclude "opt-out" class arbitration of the state law statutory claims and breach of contract claim.  The first three factors discussed above weigh in favor of a conclusion that the parties did intend to permit such class arbitration of those claims, but do so with less force than in the case of the FLSA claims, while the fourth, fifth and sixth factors discussed above weigh against such a conclusion.

## C.   APPLICABLE GUIDANCE UNDER COLORADO LAW.

I have carefully reviewed the various authorities cited by the parties concerning the requirements of Colorado law to the clause construction issues disputed here. Given the conclusions reached above, the most germane of these authorities were *Miller v. Monumental Life Ins. Co.,* 502 F.3d 1245, 1253 (10th Cir. 2007); *Moland v. Indus. Claim Appeals Office of State,* 111 P.3d 507, 510-11 (Colo.App. 2004); and *Urtado v. Allstate Ins. Co.,* 33 Colo. App. 162, 167 (Colo.App. 1973).  Even allowing for the fact that the present case does not involve a contract of insurance, and recognizing that the *contra proferentem* rule of construction is used in Colorado only as a rule of last resort, when other aids to construction are not sufficient to remove significant doubts as to the intentions of the parties, application of this rule is appropriate in the present case to resolve the substantial and legitimate doubts remaining as to

EXHIBIT 1

whether the Arbitration Agreement was intended to permit or to preclude "opt-out" class arbitration of the state law statutory claims and breach of contract claim.

If DISH's intention was to bar class arbitration of otherwise arbitrable claims, the arbitration agreement it drafted and presented to its employee to sign, easily could have so stated more clearly and unambiguously than the Arbitration Agreement at issue here. A reasonable employee reviewing that agreement would have read that that it required arbitration of "any claim, controversy and/or dispute" that was "in any way related to" the employee's "application for employment, employment and/or termination of employment. . .;" such an employee reasonably could have concluded that this expansive definition of the scope of arbitrable disputes encompassed class arbitration proceedings. A reasonable employee reviewing the agreement's language reasonably could have concluded the list of six enumerated matters excluded from the scope of arbitrable disputes was comprehensive rather than partial; the omission of class arbitration from that list reasonably could have been interpreted by a signatory employee as indicating that class arbitration therefore was not one of the matters excluded from the scope of arbitrable disputes. A reasonable employee reviewing the agreement's language reasonably could have concluded that the penultimate paragraph's list of valuable incidents of judicial proceedings that would be waived by signing the agreement was a complete list; omission of the right to employ class proceedings from that list reasonably could have been interpreted by a signatory employee as indicating that class arbitration therefore was not one of the valuable incidents of judicial proceedings being waived.

All of these are significant and important ambiguities. Application of the other rules of construction counseled by Colorado law have not allowed me to resolve them without significant remaining doubts as to what the parties mutually intended. Accordingly, and as a last resort, I resolve those doubts against the drafter of the Arbitration Agreement – DISH. Accordingly, I conclude that the Arbitration Agreement does permit class arbitration of the Claimant's state law statutory and breach of contract claims.

### III.   CONCLUSION.

For the reasons given above, this Tribunal concludes that the Arbitration Agreement permits the present arbitration to proceed on an "opt-in" collective basis, as provided in Section 216(b), as to Claimant's FLSA claims. I further conclude that the Arbitration Agreement also permits class arbitration of Claimant's state law statutory and breach of contract claims. As provided in Rule 3 of the Class Arbitration Rules, this **Clause Construction Award** is a partial final award: Only the clause construction issues addressed above are adjudicated in this partial final award. The Tribunal reserves and retains jurisdiction over all other disputes at issue in this matter, but all proceedings in this arbitration are hereby stayed for a period of thirty days from the date hereof to permit any party to move a Court of competent jurisdiction to confirm or vacate this partial final Clause Construction Award. The parties are directed to keep me apprised of whether any such judicial proceedings are initiated and, if so, of their progress.

DATED this <u>29th</u> day of <u>December</u>, 2015.

_____
Thomas J. Brewer
Arbitrator

EXHIBIT 1