IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Case No. 16-cv-00314-LTB

DISH NETWORK, L.L.C. and
ECHOSPHERE, L.L.C.,

       Plaintiffs,

v.

MATTHEW RAY, on behalf of himself and similarly situated persons,

       Defendant.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

       This case is before me on Plaintiffs DISH Network, L.L.C. and Echosphere, L.L.C.'s (collectively "DISH") Petition to Vacate Clause Construction Arbitration Award [Doc # 1]. After consideration of the Petition and all related pleadings, I deny the Petition.

## I. Background

       Defendant Matthew Ray ("Ray") worked as an inside sales associate for DISH until his employment was terminated in 2015. Following his termination, Ray sued DISH in this Court and asserted claims under the Fair Labor Standards Act (the "FLSA"), Colorado's Wage Claim Act, and the Colorado Minimum Wage Act, as well as a common law claim for breach of contract. After DISH demanded that he arbitrate his claims under the arbitration agreement (the Agreement") that he signed, Ray dismissed his case in this Court and filed a case with the American Arbitration Association ("AAA") asserting the same four claims for relief. Ray then

also sought to pursue his claims as a class action under Fed. R. Civ. P. 23 and a collective action under § 216(b) of the FLSA, 29 U.S.C. § 201, *et seq.*

The first issue before the arbitrator selected by the parties was whether the Agreement permitted collective or class arbitration. On December 29, 20115, the arbitrator issued his Clause Construction Award (the "Award") wherein he concluded (1) that he had jurisdiction to determine whether the Agreement permitted collective or class arbitration and (2) that the Agreement did permit such arbitrations. By the Petition, DISH challenges both of these conclusions and seeks to vacate the Award.

## II. Standard of Review

Judicial review of an arbitration award under the Federal Arbitration Act (the "FAA") is "strictly limited," and the applicable standard of review is "among the narrowest known to law." *Bowen v. Amoco Pipeline Co.,* 254 F.3d 925, 931 (10th Cir. 2001) (citation omitted). Thus, a court may only vacate an arbitration award in the limited circumstances set forth in § 10 of the FAA, 9 U.S.C. § 10, or in accordance with a few judicially created reasons. *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.,* 119 F.3d 847, 849 (10th Cir. 1997).

Under § 10 of the FAA, an arbitration award may be vacated if (1) the award was procured by fraud, corruption, or undue means; (2) there was evident partiality or corruption in the arbitrator; (3) the arbitrator was guilty of misconduct in refusing to postpone the hearing, in refusing to hear evidence, or of any other misbehavior resulting in prejudice to a party; or (4) the arbitrator exceeded his powers or imperfectly executed them. 9 U.S.C. § 10(a)(1) - (4). In addition, an arbitration award may be vacated for the judicially created reasons of violation of public policy, manifest disregard of the law, and denial of a fundamentally fair hearing. *Sheldon*

*v. Vermonty,* 269 F.3d 1202, 1206 (10th Cir. 2001).  *But see Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 672 n. 3 (2010) (noting uncertainty as to whether "manifest disregard" constitutes an independent basis for vacating arbitration award or is merely a gloss on enumerated grounds set forth in § 10 of the FAA).

The burden is on the party seeking to vacate an arbitration award to show that one of the limited grounds for doing so exists.  *Youngs v. Am. Nutrition, Inc.,* 537 F.3d 1135, 1141 (10th Cir. 2008).  "That burden is very great."  *Id.* (citation omitted).  Errors in an arbitrator's findings of fact, interpretation of the law, or application of the law do not justify vacating an arbitration award.  *Hollern v. Wachovia Sec., Inc.,* 458 F.3d 1169, 1172 (10th Cir. 2006) (citation omitted).  *See also Stolt-Nielsen,* 559 U.S. at 671 (petitioners seeking to vacate arbitration award must "clear a high hurdle" and "[i]t is not enough for petitioners to show that the [arbitrator] committed an error - or even a serious error").  Furthermore, errors in an arbitrator's interpretation or application of the law are generally not reversible unless record shows willful inattentiveless to governing law or that arbitrator knew the law and explicitly disregarded it. *Hollern,* 458 F.3d at 1176.

### III.  Analysis

#### A. The Arbitrator's Conclusion that He Had Jurisdiction to Decide Whether the Agreement Permits Collective or Class Arbitration

In analyzing his jurisdiction to determine the arbitrability of a class and collective proceeding under the Agreement, the arbitrator first correctly noted that while courts generally decide certain "gateway issues," the parties may agree to allow arbitrators to decide these issues if their arbitration agreement clearly and unmistakably indicates their intent to do so.  *See* Award attached as Ex. 1 to Petition, p. 5.   The arbitrator then determined that he had jurisdiction to

decide whether the Agreement permits collective or class arbitrations because this question was not a "gateway issue" of whether the parties agreed to arbitrate a matter, *i.e.,* a "question of arbitrability," but rather a question of what kind of arbitration proceeding the parties agreed to. *Id.* Alternatively, the arbitrator determined that he had jurisdiction to decide this issue because the parties clearly and unmistakably indicated their intent that he do so both in the language of the Agreement itself and by their incorporation of the AAA's National Rules for the Resolution of Employment Disputes ("Rules"). *Id.* at p. 6.

I disagree with the arbitrator's conclusions that the question of whether the Agreement permits collective or class arbitration is not a question of arbitrability and that the parties clearly and unmistakably indicated their intent that the arbitrator decide this question in the language of the Agreement itself. Nonetheless, because I agree with the arbitrator's conclusion that the parties clearly and unmistakably indicated their intent that he decide whether the Agreement permits collective or class arbitration through their incorporation of the AAA's Rules into the Agreement, I conclude that he did not exceed his powers in deciding this question.

**1. Questions of Arbitrability**

While the Supreme Court has not yet decided whether the availability of class actions under an arbitration agreement is a question of arbitrability to be presumptively decided by the courts, *Oxford Health Plans, LLC v. Sutter,* – U.S. – , 133 S. Ct. 2064, 2068 n. 2 (2013), two other circuits have concluded that it is. *See Opalinski v. Robert Half Int'l Inc.,* 761 F.3d 326, 331-35 (3rd. Cir. 2014), *cert. denied,* – U.S. –, 135 S. Ct. 1530 (2015) (whether an agreement provides for classwide arbitration is a "question of arbitrability" to be decided by the court because it implicates both whose claims the arbitrator may resolve and the type of controversy

the parties agreed to submit to arbitration); *Reed Elsevier, Inc. ex rel LexisNexis Div. v. Crockett,* 734 F.3d 594, 597-99 (6th Cir. 2013), *cert. denied,* – U.S. –, 134 S. Ct. 2291 (2014) (the question of whether an arbitration agreement permits classwide arbitration is a gateway question reserved for judicial determination unless the parties clearly and unmistakably provide otherwise because it is fundamental to the manner in which the parties will resolve their dispute).

I find the reasoning of *Opalinski* and *Reed Elsevier* persuasive, particularly in light of the Third and Sixth Circuits' reliance on *Stolt-Nielsen* wherein the Supreme Court recognized that there are fundamental differences between bilateral and classwide arbitration and that it therefore cannot be presumed that the parties agreed to the latter by simply agreeing to submit their disputes to arbitration. *Stolt-Nielsen,* 559 U.S. at 685-87. As DISH acknowledges, decisions from the Supreme Court are binding on the arbitrator under the terms of the Agreement. *See* Agreement attached as Ex. 2 to Petition. I therefore conclude that the question of whether the Agreement permits collective or class arbitration is a question of arbitrability or gateway issue that is typically decided by a court. It follows that the arbitrator exceeded his powers in deciding this question unless the Agreement clearly and unmistakably indicates Ray and DISH's intent to have the arbitrator make this determination. *See e.g. AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986) (unless parties clearly and unmistakably provided otherwise, the question of whether the parties agreed to arbitrate a particular grievance is to be decided by a court, not an arbitrator); *Galbraith v. Clark,* 122 P.3d 1061, 1064-65 (Colo. App. 2005) ("Issues of arbitrability - whether a particular dispute should be arbitrated - are presumptively submitted to the courts .... [a]bsent clear and unmistakable evidence to the contrary....").

**2. The Parties' Intent**

The arbitrator determined that the parties clearly and unmistakably expressed their intention that the arbitrator decide questions of arbitrability by (1) the broad and sweeping language in the Agreement that Ray and DISH would arbitrate "any claim, controversy and/or dispute between them, arising out of and/or in any way related to [Ray's] application for employment, employment and/or termination of employment, whenever and wherever brought;" and (2) the Agreement's provision that any arbitration thereunder will be conducted "under the then current procedures of the [AAA's Rules]." *See* Agreement.

As to the parties' broad agreement regarding matters to be submitted to arbitration, there is nothing in the language used expressly delegating authority to the arbitrator to decide issues of arbitrability. This language therefore falls short of providing clear and unmistakable evidence that the parties intended the arbitrator to decide issues of arbitrability in contravention of the normal practice of having the courts do so. *Compare Galbraith,* 122 P.3d at 1064 (arbitration agreement stating that aribtrator would decide "[a]ny dispute concerning this Agreement - the way it is formed, its applicability, meaning, enforcability ..." provided clear and unmistakable evidence that parties agreed to have arbitrator decide questions of arbitrability).

Any clear and unmistakable intent by Ray and DISH for the arbitrator to decide questions of arbitrability must therefore come from their incorporation of the AAA's Rules into the Agreement. As cited by the arbitrator, Rule 6(a) provides:

6. Jurisdiction

a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.

*See* AAA Rules (2009). *See also* Award, p. 6.

6

In *Ahluwalia v. QFA Royalties, LLC,* 226 P.3d 1093, 1098-99 (Colo. App. 2009), the Colorado Court of Appeals cited numerous federal and state decisions for the proposition that if parties expressly incorporate rules that empower an arbitrator to decide questions of arbitrability, then this incorporation constitutes clear and unmistakable evidence that the parties intended to delegate these questions to the arbitrator. Finding this authority persuasive, the Colorado Court of Appeals went on to conclude that the parties authorized the arbitrator to decide all arbitrability issues by their incorporation of the AAA's Commercial Arbitration Rules, which include a jurisdictional provision analogous to that in the Rules, into their arbitration agreement. *Id. See also Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., Inc.* 251 P.3d 1091, 1094 (Colo. App. 2010) (distinguishing case on the underlying facts but recognizing that the explicit incorporation of a rule that empowers the arbiter to determine arbitrability into an arbitration agreement constitutes clear and unmistakable evidence of the parties' intent to delegate that issue to the arbitrator).

DISH argues, and the arbitrator conceded (*see* Award, p. 7) that there is Tenth Circuit authority to the contrary. I do not agree. In *Riley Mfg. Co. v. Anchor Glass Container Corp.,* 157 F.3d 775, 777 n. 1 (10th Cir. 1998), the Tenth Circuit noted in a footnote that the parties agreed that arbitration would be conducted "in accordance with the Commercial Arbitration Rules of the [AAA]." The Tenth Circuit did not specifically address whether the incorporation of these rules provided the requisite clear and unmistakable evidence that the parties intended to delegate questions of arbitrability to the arbitrator, and there is no indication that this issue was even raised by the parties. The same is true of supporting authority from other jurisdictions cited by DISH. *See Opalinski,* 761 F.3d at 335-6; *Reed Elsevier,* 734 F.3d at 599.

I find *Ahluwalia* persuasive, as did the arbitrator, and conclude that Ray and DISH's incorporation of the AAA Rules constitutes clear and unmistakable evidence of their intent to delegate questions of arbitrability to the arbitrator. On this basis then, I conclude that the arbitrator did not exceed his powers in concluding that he had jurisdiction to determine whether the Agreement permits collective or class arbitration.

**B. The Arbitrator's Conclusion that the Agreement Permits Collective and Class Arbitrations**

Having concluded that the arbitrator had jurisdiction to decide this issue, I next address the arbitrator's conclusion that the Agreement permits collective or class arbitration of all of Ray's claims. The arbitrator based this conclusion on his analysis of six features of the language in the Agreement and the *contra proferentem* rule of construction whereby a contract may be construed against the drafter if other rules of construction fail to shed light on the contract's meaning. *See* Award, pp. 9 - 19.

The arbitrator determined that the following three features supported the conclusion that the Agreement allowed for collective or class arbitration: (1) the broad, inclusive language used to define the scope of arbitrable controversies which would include claims under the FLSA which expressly authorizes collective actions; (2) the listing of six enumerated exceptions to arbitrable controversies which did not include class or collective actions; and (3) the "penultimate" paragraph which identifies four valuable rights - the right to a trial, to a trial by jury, and to common law claims for punitive and/or exemplary damages - that would be waived by agreeing to arbitrate but states that "[o]ther than [these four rights], nothing in this Agreement limits any statutory remedy to which [Ray] may be entitled under law." *Id.* at pp. 9-14.

Conversely, the arbitrator determined that the following three features of the Agreement's language supported DISH's position that the Agreement did not allow for collective or class arbitration: (1) failure to specifically recognize that collective or class arbitration was permitted; (2) references suggesting bilateral rather than collective or class proceedings; and (3) the requirement of confidentiality which is arguably at odds with the AAA rules for class arbitrations. *Id.* at pp. 14-18.

The arbitrator then concluded that the three features of the language in the Agreement supporting Ray's position outweighed the other three features with respect to Ray's FLSA claim so that this claim could proceed on a collective basis as provided in § 216(b) of the FLSA. The arbitrator concluded that it was a "closer case," however, with respect to whether the Agreement permitted class arbitration of Ray's state statutory and breach of contract claims. The arbitrator therefore proceeded to interpret the Agreement against DISH as its drafter before concluding that these claims could also proceed on a classwide basis.

DISH argues that the arbitrator's conclusion that the Agreement permits collective or class arbitration of all of Ray's claims is in error because it disregards Supreme Court precedent, Colorado law, and the express and unambiguous terms of the Agreement. I disagree under the strictly limited standard of review applicable to arbitration awards.

### 1. Supreme Court Precedent

DISH argues that the arbitrator ignored the Supreme Court's holding in *Stolt-Nielsen* that when there is silence in an arbitration agreement concerning class arbitration, there is no consent to this type of arbitration proceeding. Ray counters that *Stolt-Nielsen* is distinguishable on its

9

facts because the parties in that case stipulated that their arbitration agreement was silent on the issue of class arbitration. I agree.

In *Stolt-Nielsen,* the Supreme Court recognized that "[i]t is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen,* 559 U.S. at 671 (internal quotation and citation omitted). Because the parties there had stipulated that their agreement was silent with respect to class arbitration, the Supreme Court went on to conclude that the arbitration panel's decision that the arbitration clause at issue allowed for class arbitration was necessarily based on public policy considerations. *Id.* at 676 - 77. *See also Oxford Health Plans,* 133 S. Ct. at 2069 (explaining that arbitration panel decision to order class arbitration in *Stolt-Nielsen* was overturned because it lacked any contractual basis in light of parties' "unusual stipulation" and instead imposed panel's conception of sound public policy). There is no stipulation in this case that the Agreement is silent with respect to class arbitration, so *Stolt-Nielsen* is therefore distinguishable.

DISH attempts to circumvent the significance of the parties' stipulation in *Stolt-Nielsen* by citation to *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011). At issue in *Concepcion*, however, was not the interpretation of the parties' agreement with respect to class arbitration but rather whether their agreement not to allow class arbitration could be disregarded as a matter of law on the basis that it was unconscionable. In holding that the California Supreme Court's ruling to this effect was pre-empted by the FAA, the Supreme Court noted that class arbitration, to the extent that it was mandated by judicial decision rather than the consent of the parties, was inconsistent with the FAA and its principal purpose of ensuring that private arbitration

agreements were enforced according to their terms. *Id.* at 344 - 48.  Thus, *Concepcion* does not undermine the significance of the parties' stipulation in *Stolt-Nielsen* or demonstrate that the arbitrator erred in analyzing whether Ray and DISH consented to collective or class arbitration.

I therefore conclude that the arbitrator's thorough analysis of whether the Agreement allowed for collective or class arbitrations was entirely consistent with *Stolt-Nielsen*.  I further note that even if the arbitrator's analysis was at odds with this authority, this error in interpreting and applying the law does not provide a basis for vacating this portion of the Award in any event.  Stolt-Nielsen, supra; Hollern, supra.  *See also Oxford Health Plans,* 133 S. Ct. at 2068 (internal citation and quotation omitted) ("... an arbitral decision even arguably construing or applying the [arbitration] contract must stand, regardless of the Court's view of its (de)merits.").

### 2. Colorado Law

DISH cites two Colorado cases in support of its argument that the arbtitrator manifestly disregarded Colorado law applying the Supreme Court's decision in *Stolt-Nielsen*.  I disagree that these cases establish any error by the arbitrator.

First, in *Hickey v. Brinker Int'l Payroll Co., L.P.,* 2014 WL 622883 (D. Colo. Feb. 18, 2014), an unpublished decision by another judge in this Court, the plaintiffs argued that they should be permitted to arbitrate collective or class action claims because the applicable agreements did not expressly bar them.  *Id.* at *4.  The Court rejected this argument and cited *Stolt-Nielsen* for the proposition that silence on this issue cannot be read to require defendant to submit to collective or class arbitration.  *Id.*  There is no indication, however, that the plaintiffs in *Hickey* sought to establish the parties' intent to allow such arbitrations based on other language in the arbitration agreements.  Thus, it does not follow from *Hickey* that Colorado law

11

precludes a finding that an arbitration agreement permits collective or class arbitration under the facts and circumstances of this case.

The case of *Medina v. Sonic-Denver T, Inc.,* 252 P.3d 1216 (Colo. App. 2011), also fails to establish that the arbtitrator manifestly disregarded Colorado law in concluding that the Agreement permits collective and class arbitrations. In *Medina*, the plaintiff-employees were asking the court to declare that express waivers of class arbitration were unconscionable and therefore unenforceable. *Id.* at 1218. Relying on *Stolt-Nielsen* and *Fensterstock v. Education Fin. Partners,* 611 F.3d 124 (2d. Cir. 2010), *cert. granted and judgment vacated by,* 564 U.S. 1001 (2011), the Colorado Court of Appeals concluded that if the waiver was unenforceable, the arbitration agreement would then be silent as to class arbitration and would therefore lack the requisite consent to this type of proceeding by the defendant-employer. *Id.* at 1220. Because of the express waivers of class arbitration, however, there was no occasion for the court to analyze the parties' intent on this issue.

Finally, although I reject DISH's argument that the case law discussed above demonstrates that the arbitrator's conclusion that the Agreement permits collective and class arbitration was at odds with Colorado law applying *Stolt-Nielsen,* this is not a sufficient basis to vacate the award. *Oxford Health Plans, supra; Stolt-Nielsen, supra; Hollern, supra.*

### 3. The Arbitrator's Interpretation of the Agreement

DISH argues that the arbitrator erred in construing the Agreement against it as the drafter and in attaching greater weight to factors that supported Ray's position that the Agreement permits collective and class arbitrations. DISH argues that the arbitrator necessarily interpreted the Agreement as he did in order to justify his public policy preference to allow class arbitration.

I disagree that the law is so clearly contrary to the arbitrator's analysis that the only plausible explanation for his decision are public policy considerations.

As both DISH and the arbitrator acknowledge, it is only appropriate to construe language in a contract against the drafter when other rules of contract interpretation fail. *Moland v. Indus. Claims Appeal Office,* 111P.3d 507, 510 (Colo. App. 2004), *cert. denied,* 2005 WL 1140354 (May 16, 2005). Because the arbitrator found that there were features of the language in the Agreement that supported both parties' positions on class arbitration of Ray's state statutory and breach of contract claims, he opted to resolve the resulting ambiguity against DISH as the drafter of the Agreement. *See* Award, pp. 18-19. Under these circumstances, it is apparent that the arbitrator correctly stated the *contra proferentem* rule of construction and sought to apply it. There is therefore no basis to vacate the Award because the arbitrator manifestly disregarded Colorado law in interpreting the Agreement against Dish. *Hollern, supra.*

There is likewise no basis to vacate the Award because the arbitrator purportedly attached greater weight to factors supporting Ray's position that the Agreement permits collective and class actions. As Ray points out, contested disputes typically require the decisionmaker to identify and weigh the relevant factors as the arbitrator did in this case. The fact that the arbitrator ruled in favor of Plaintiffs after engaging in this analysis is not indicative of a disregard of Colorado law in favor of public policy considerations and likewise fails to provide a basis for vacating this portion of the Award.

## IV. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that

1. DISH's Petition to Vacate Clause Construction Arbitration Award [Doc # 1] is DENIED; and

2. The case is DISMISSED WITH PREJUDICE.

Dated: December  28 , 2016 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock  
LEWIS T. BABCOCK, JUDGE